**Robert I. Sanders, OSB 70125**
Email: ris@woodtatum.com
**Todd A. Zilbert, OSB No. 89144**
Email: taz@woodtatum.com
**Wood Tatum**
6915 SW Macadam Avenue, Suite 115
Portland, Oregon 97219
Tel:  (503) 224-5430
Fax: (503) 241-7235

**George M. Chalos** (admitted pro hac vice)
Email: gmc@chaloslaw.com
**Chalos & Co, P.C.**
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300
Facsimile:  (516) 750-9051

Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **OS SHIPPING CO. LTD. and ASSURANCEFORENIGEN SKULD (GJENSIDIG), on its own behalf and as subrogee of OS SHIPPING CO. LTD.,** | ) ) ) ) ) | Case No. 3:11-cv-377-BR |
| | ) | **IN ADMIRALTY** |
| Plaintiffs, | ) ) | **AMENDED VERIFIED COMPLAINT FOR BREACH OF MARITIME CONTRACT** |
| v. | ) ) | |
| **GLOBAL MARITIME TRUST(S) PRIVATE LIMITED, JS LINE SA, and HONG JAE HYUNG a/k/a JAY H. HONG,** | ) ) ) | |
| Defendants. | ) | |

1    Plaintiffs, OS SHIPPING CO. LTD. (hereinafter "OSS") and ASSURANCEFORENIGEN

2    SKULD (GJENSIDIG) (hereinafter "SKULD"), as subrogee of OSS and on its own behalf,

3    (hereinafter collectively referred to as "Plaintiffs") by their attorneys, Wood Tatum and Chalos &

4    Co, P.C., as and for their Amended Verified Complaint against Defendants, GLOBAL MARITIME

5    TRUST (S) PRIVATE LIMITED (hereinafter "GMT"), JS LINE SA (hereinafter "JSL"), and

6    HONG JAE HYUNG a/k/a JAY H. HONG (hereinafter "HONG")(hereinafter collectively

7    "Defendants"), allege upon information and belief as follows:

8    **JURISDICTION**

9    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

10   Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract – *i.e.*

11   a time charter party agreement.    This case also falls under this Court's admiralty and maritime

12   jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the

13   Supplemental Rules for Certain Admiralty and Maritime Claims, and the Federal Arbitration Act,  9

14   U.S.C. § 4.

15   2.    The jurisdiction of the Court is founded on the presence within the District of an asset

16   of the Defendants that may be attached by process of maritime attachment and garnishment under the

17   provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled

18   in Section III of this Verified Complaint.

19   **THE PARTIES**

20   3.    At all times material hereto, Plaintiff OSS was a foreign business entity with a

21   principal place of business at 3100-814 Baejae Bldg 55-4, Seosomoun-Dorg, Jung-Gu, Seoul, South

22   Korea, and was the Operation Manager of the M/V MIPO BONANZA.

23   4.    At all times material hereto, Plaintiff SKULD was a foreign business entity with a

24   principal place of business at: Ruseløkkvn. 26, 0251 Oslo, Norway, and was the Protection and

25   Indemnity insurer of Plaintiff OSS.    According to the contract of insurance between OSS and

26   SKULD, SKULD was subrogated to all rights OSS had against another party or entity with respect to

**PAGE - 2  AMENDED VERIFIED COMPLAINT**

1  any payment made by SKULD under the Rules relating to the insurance provided by SKULD to OSS

2  in connection with the subject cargo claims referenced herein.

3      5.      At all times material hereto, Defendant GMT was a foreign business entity with a

4  principal place of business at 5 Shenton Way #25-11 UIC Building, Singapore 068808, Republic of

5  Singapore.

6      6.      At all times material hereto, Defendant JSL was a foreign business entity

7  incorporated under the laws of Panama with a principal place of business c/o Doriko Ltd, Room

8  1307, Sunhwa Building, 5-2, Sunhwa-dong, Jung-gu, Seoul, 100-731, South Korea.

9      7.      At all times material hereto, Defendant HONG was and is an individual who is a

10  citizen of Singapore and who uses both his legal name, HONG JAE HYUNG and the alias JAY H.

11  HONG.

12                                **FACTS AND CLAIM**

13      8.      On or about September 11, 2009, Plaintiff OSS, as Operation Manager, and

14  Defendant HONG, purportedly acting on behalf of GMT, as Charterer, entered into a time charter

15  agreement for the M/V MIPO BONANZA for a time charter period of 4-6 months, 20 days more or

16  less in Charterers' option.  The charter party was extended on substantially the same terms on March

17  22, 2010.  A copy of the charter party agreement is attached to the Chalos Declaration as Exhibit A.[1]

18      9.      This time charter party agreement is a maritime contract.

19      10.     Pursuant to the terms of the charter party agreement, the parties agreed to the

20  arbitration of disputes arising out of the maritime contract in London with English law to apply.

21      11.     Clause 87 of the charter party agreement further provided, in relevant part:

22          . . . *Charterers are entitled to trade to Yemen and Sri Lanka/Libya/Bangladesh on the*

23          *following condition:*

24

25  ────────────────────

26  [1] All documents referenced herein are attached as Exhibits to the Declaration of George M. Chalos (hereinafter "Chalos Declaration"), dated April 19, 2011.

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

**PAGE - 3  AMENDED VERIFIED COMPLAINT**

1    *Notwithstanding the Interclub agreement or any other provision which may be*
2    *contained in the charter party to the contrary, all cargo claims which may occur*
3    *during discharge at Yemen/Sri Lanka/Libya/Bangladesh including possible claims for*
4    *shortage and which may be imposed to the vessel or her Owners to be for Charterers*
5    *entire liability and responsibility.  Charterters [sic] to deal with and defend same*
6    *directly with the cargo interests/claimants without involving Owners or their P & I*
7    *Club. . . ."*

8    12.    Additionally, Clause 4 of the charter party agreement provided:
9    *That the Charterers shall pay for the use and hire of the said Vessel at a rate of USD*
10   *13,500.00 (Dollars) daily including overtime payable each 15 days in advance....*

11   13.    The vessel carried two (2) parcels of cargo from China.  First, the vessel loaded a
12   cargo of steel rods in Dalian, China destined for Ravenna, Italy.  The vessel then loaded a cargo of
13   tomato paste at Qinghuangdao, China to be discharged at Al Khoms, Libya.  Thereafter, a cargo of
14   timber was loaded in Bintulu, Malaysia destined for Jeddah, Saudi Arabia.

15   14.    On August 26, 2010, after the vessel arrived in Jeddah, Saudi Arabia to discharge the
16   timber, a survey was conducted to investigate damages to the tomato paste and timber cargo.  The
17   survey report details the damages to the subject cargo, and the potential causes of the damages. A
18   copy of this survey report is attached to the Chalos Declaration as Exhibit B.

19   15.    GMT received daily reports regarding the vessel's progress, which included details
20   relating to the damages to the cargo.  GMT also received a Note of Sea Protest prepared by the
21   Master of the vessel indicating that the cargo sustained damages.  These daily reports and the Note of
22   Sea Protest put GMT on notice that it could potentially be subject to claims for the damages to the
23   tomato paste and timber cargos.  A copy of the Note of Sea Protest is attached to the Chalos
24   Declaration as Exhibit C.

25   16.    Upon the vessel's arrival at the discharge port in Libya in August 2010, damage to the
26   cargo and cargo shortages were obvious.

**PAGE - 4  AMENDED VERIFIED COMPLAINT**

17.     The receivers alleged a claim for cargo damage and loss of approximately USD 1.5 million (hereinafter "the Libyan cargo claims"); demanded security in that amount from OSS and detained the MIPO BONANZA in Libya.

18.     In October 2010, Plaintiffs requested that GMT provide security for the Libyan cargo claims.

19.     Upon information and belief, the cargo claims would not have been covered under GMT's Protection and Indemnity ("P&I") Insurance, and GMT would have been liable for same.

20.     A dispute arose between the parties as to whether GMT was obligated to provide security pursuant to Clause 87 of the charter party agreement. In accordance with the terms of the charter party, the parties applied to a London Arbitration Tribunal for a ruling as to the interpretation and effect of Clause 87.

21.     Thereafter, on or about December 3, 2010, the receivers of the cargo provided a fixed demand for security of USD 1.7 million and advised that once security was provided, the MIPO BONANZA would be released. Accordingly, despite disputes between the parties as to whether a declaratory award on the construction of Clause 87 was necessary, GMT requested that the Tribunal review and address the proper construction of Clause 87 urgently, and the Tribunal agreed to do so.

22.     After considering the parties' submissions, the Arbitration Tribunal issued a Declaratory Arbitration Award on January 17, 2011, in favor of OSS. The Arbitration Tribunal concluded that Clause 87 "imposes an obligation on the Charterers to provide security in respect of cargo claims relating to any cargo destined for Libya. It makes no difference whether or not the ship has actually been arrested. As and when she is arrested or detained by the local authorities without a formal arrest having been carried out, then it will be up to the charterers to provide the appropriate security to release the vessel from arrest or to prevent her from being detained." A copy of the Tribunal's Declaratory Award is attached to the Chalos Declaration as Exhibit D.

23.     The Declaratory Award further provides:

**PAGE - 5  AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

a. that Charterers bear their own and the Owners' costs related to the declaratory arbitration award, the latter (if not agreed) to be assessed on a standard basis in OSS's option either by the English High Court of Justice or by the Tribunal in an award of costs;

b. that Charterers bear the costs of the Declaratory Award(s) in the sum of £34,925.00, provided that if Owners paid any part of the said costs of the Award in the first instance, they shall be entitled to immediate reimbursement by Charterers of this sum;

c. that Owners be entitled to compound interest at the rate of 5% per annum, compounded at three (3) monthly rests, on any sums payable to them, from the date of the award until the date of payment or reimbursement.

24. Despite due demand, Defendant, GMT, failed and refused to provide security to the cargo receivers to secure the release of the MIPO BONANZA, and has failed to pay any part of the sums due to OSS under the Declaratory Award.

25. The Declaratory Award is conclusive between the parties and capable of enforcement under English law and procedure.

26. On or about January 5, 2011, in order to mitigate their continuing damages due to GMT's refusal to provide security for the release of the MIPO BONANZA, Plaintiff OSS, through Plaintiff SKULD, settled the Libyan cargo claim for USD 1,000,000.

27. SKULD also incurred no less than USD 500,000 for survey, investigation, attorneys and expert costs.

28. Additionally, as a result of GMT's failure to comply with its obligations under the charter party agreement, Plaintiff OSS was forced to incur damages of no less than USD 3,850,000 (consisting of amounts owed for, *inter alia*, unpaid hire and damage to the cargo).

29. Despite due demand, Defendant, GMT, has wrongfully failed, neglected, or otherwise refused to indemnify Plaintiffs for the settlement sums paid to the cargo receivers, has failed, neglected, or otherwise refused to pay any portion of the sums undisputedly due and owing to Plaintiffs under the Declaratory Award, and has wrongfully failed, neglected, or otherwise refused to pay any portion of the amounts owed to Plaintiffs under the parties' time charter party agreement.

**PAGE - 6  AMENDED VERIFIED COMPLAINT**

30.     HONG admitted that a debt is owed to Plaintiffs, however, claims that "we don't have any money" to satisfy this debt.  See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 60, 3 – 25.

### I. BREACH OF CONTRACT

31.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs one (1) through thirty (30) and incorporate those allegations herein.

32.     The September 11, 2009 time charter party agreement is a binding and enforceable contract entered into between Plaintiffs and Defendant GMT.

33.     GMT has failed to comply with its obligations set forth in the parties' time charter party agreement.  Specifically, GMT has not complied with Clause 87 of the time charter party agreement by failing to provide security for the Libyan cargo claim in the first instance and failing to indemnify Plaintiffs for the settlement sums paid by SKULD to secure the release of the M/V MIPO BONANZA.

34.     Additionally, GMT has failed to pay hire due and owing to Plaintiffs under the charter party.

35.     Plaintiffs have performed all of their obligations under the September 11, 2009 charter party agreement.

36.     Accordingly, Plaintiffs are  entitled to recover the following amounts resulting from GMT's breach of the maritime contract:

| | | | |
|---|---|---|---|
| A | Principal Claim Amount: | | USD 5,350,000.00 |
| B. | Estimated interest on Principal Claim: | | USD 1,046,557.22 |
| | 3 years at 6%, compounded quarterly | | |
| C. | Arbitration Costs: | | USD 56,940.66 [£34,925] |
| | 1 year at 5%, compounded quarterly | | USD 3,000 |
| D. | Estimated Attorneys' fees: | | USD 450,000 |
| **TOTAL** | | | **USD 6,906,497.88** |

**PAGE - 7 AMENDED VERIFIED COMPLAINT**

1      37.    As a result of GMT's breach, an amount no less than USD 6,906,497.88 is due and

2  owing to Plaintiffs.

3

4                      **II. JSL AND HONG ARE THE ALTER-EGOS OF GMT**

5      38.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs one

6  (1) through thirty-seven (37) and incorporate those allegations herein.

7      39.    The Ninth Circuit Court of Appeals has established a three (3) factor test to be

8  applied by courts in determining whether to pierce the corporate veil, which requires courts to look

9  to:

10           a.  the amount of respect given to the separate identity of the corporation by its

11                shareholders;

12           b.  the degree of injustice visited on the litigants by recognition of the corporate

13                entity; and

14           c.  the fraudulent intent of the incorporators. *Seymour v. Hull & Moreland*

15                *Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979).

16

17  A. **Amount of Respect Given to the Separate Identity of the Corporation by its Shareholders.**

18      40.    HONG caused the incorporation of both GMT and JSL. See Deposition Transcript of

19  HONG, Chalos Declaration, Exhibit E, pg. 16, 6 – 14; 67, 23 – 25.

20      41.    GMT was incorporated in Singapore in 2001. See Chalos Declaration, Exhibit L.

21      42.    JSL was incorporated in Panama in May 7, 2008, but remained inactive until HONG

22  sought to purchase the M/V GMT VENUS in March 2010. See Chalos Declaration, Exhibit M; see

23  also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 17, 12 – 15.

24      43.    Since the time of JSL's incorporation, there have been no shares issued.  Further, no

25  meetings of the directors were held for almost a two (2) year period.  See Deposition Transcript of

26  HONG, Chalos Declaration, Exhibit E, pg. 17, 12 – 23.

**PAGE - 8  AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

44.    HONG founded JSL, paid the fee to incorporate the company, and was the first president of JSL. See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 16, 6 – 14.

45.    HONG admits that, as president of JSL, he had "total control and authority over the company." See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 20, 20 – 24.

46.    HONG refused to identify the names of the individuals who invested funds for JSL's purchase of the M/V GMT VENUS. See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 156, 15 – 23.  However, Yoon admitted that HONG contributed the largest portion of funds for the purchase of the vessel.  See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 47, 5 – 12.

47.    At all relevant times herein, HONG was the controlling officer, director, and shareholder of both JSL and GMT.  See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 126, 8 – 12; see also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 23, 5 – 8.

48.    At all relevant times herein, HONG's wife, Yoon Ji Yi ("Yoon"), was an officer, director, and shareholder of both JSL and GMT (albeit in name only).  See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 126, 13 – 17; see also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 16, 20 – 17, 4.

49.    The filings made by GMT with the Singapore registry purposefully did not accurately reflect the structure of the company.  Specifically, Yoon was listed as a director, officer and shareholder of GMT in order to fool the regulators and fulfill the Singaporean corporate registration requirements. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 125, 4 – 10; see also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 68, 15 – 69, 18.

50.    JSL's Articles of Incorporation indicate that HONG's son, Hong Sung Won ("Won"), was the treasurer of JSL, however, the reality is that Won was a student at the time and did not, in

**PAGE - 9  AMENDED VERIFIED COMPLAINT**

CHALOS & CO., P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1  fact, ever act as treasurer of the corporation.[2] See Chalos Declaration, Exhibit M; see also Deposition

2  Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 57, 2 – 8.

3      51.    JSL has also failed to observe other basic corporate formalities.

4      52.    JSL does not maintain official corporate books or records.  See Deposition Transcript

5  of Yoon, Chalos Declaration, Exhibit F, pg. 83, 11 – 16.

6      53.    To the extent any may exist, if any, HONG keeps all "important" records for JSL at

7  his house.  See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 36, 22 – 25.

8      54.    Despite language in its Articles of Incorporation that "the stock register shall be kept

9  at the place designated by the board of directors," JSL failed to maintain a stock register.  See

10 Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 21, 2 – 13.

11     55.    Further, JSL does not maintain records relating to where and/or from whom funds

12 were purportedly gathered for the purchase of the M/V GMT VENUS.  See Deposition Transcript of

13 Yoon, Chalos Declaration, Exhibit F, pg. 48, 7-16.

14     56.    JSL does not have an office. See Deposition Transcript of Yoon, Chalos Declaration,

15 Exhibit F, pg. 50, 8 – 9.

16     57.    "No regular meeting[s]" of the purported directors have taken place. See Deposition

17 Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 51, 22 – 52, 5.  Meetings of JSL's directors

18 have purportedly convened at GMT's office in Singapore. See Deposition Transcript of Yoon, Chalos

19 Declaration, Exhibit F, pg. 50, 8 – 10; 52, 9 – 14; 63, 3 – 10.

20     58.    Upon information and belief, HONG, when purportedly acting on behalf of JSL, used

21 GMT's office in Singapore to conduct business.

22     59.    JSL does not have any employees.   See Deposition Transcript of Yoon, Chalos

23 Declaration, Exhibit F, pg. 50, 10 – 12.

24

25  _____

26  [2] Won was born in 1989, and Yoon admitted that he was too young to contribute during the meeting of directors purportedly held at GMT's offices.

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1        60.     JSL does not have a telephone directory listing. See Deposition Transcript of Yoon,

2  Chalos Declaration, Exhibit F, pg. 51, 2 – 4.

3        61.     JSL does not maintain its own website.  See Deposition Transcript of Yoon, Chalos

4  Declaration, Exhibit F, pg. 50, 24 – 51, 1.

5        62.     JSL does not have any e-mail addresses.  See Deposition Transcript of Yoon, Chalos

6  Declaration, Exhibit F, pg. 89, 17 – 19.

7        63.     Minutes of two (2) meetings of JSL's directors, purportedly held in May 2008 and

8  January 2010, respectively, indicate that the signature of director Won on each of the documents is

9  different.  Upon information and belief, Won's signature was forged on one (1) and possibly both

10  minutes, as Won never attended at least one (1) and possibly both of these meetings. See Deposition

11  Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 65, 8 – 23; copies of the minutes are attached

12  to the Chalos Declaration as Exhibit G.

13        64.     Moreover, while the September 2010 minutes provide as follows:

14      *Present at the meeting <u>in person</u> were all the directors of the corporation, namely*

15      *Hong Jae Hyung, director and president; Hong Sung Won, director and treasurer;*

16      *Yoon Ji Yi, director and secretary...* (emphasis added).

17  Won was not physically present at the meeting.  Rather, he was away and serving in the Korean

18  army.[3] See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 67, 12 – 20.

19        65.     Further, while the minutes of the January 2010 and September 2010 meetings indicate

20  that Yoon was the company's "secretary," she did not actually prepare the documents.  See

21  Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 78, 18 – 19.

22        66.     Upon information and belief, all purported documents for JSL were prepared by

23  HONG.

24

25

26

---

[3] Yoon claimed that she spoke with Won regarding the meeting, and that when she saw him in person, Won signed the document. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, 69, 23 – 70, 15.

**PAGE - 11**    **AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

67.    Similarly, HONG prepared minutes of the March 2011 meeting of the directors (which, again, took place in GMT's office) after he resigned from JSL. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 83, 17 – 84, 13.

68.    Upon information and belief, the purported meetings never actually took place.

69.    When HONG founded JSL, he opened a bank account in the name of JSL at a Singapore branch of the Korean bank, Hana Bank, prepared a signature card, and was the only person authorized to make transactions in and out of the bank account. See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 24, 17 – 25, 16.

70.    HONG remains in control of JSL's bank account.

71.    HONG remains in exclusive control of GMT's bank account.

72.    Neither HONG nor Yoon have submitted any documentation to the bank directing that HONG's authorization to access JSL's bank account be terminated and/or any other changes to include additional signatures on the account. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 86, 7 – 18; see also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 26, 25 – 29, 17.

73.    While stating that the purpose for which JSL was incorporated was to purchase a vessel, Yoon admitted that JSL's articles of incorporation indicate that the company was capitalized with merely USD 10,000. See Chalos Declaration, Exhibit M; see also Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 58, 11 – 16.

74.    However, HONG, who was the president, director, founder and in total control of JSL in May 2008, testified that the USD 10,000 was never paid to capitalize the company. *See* Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 22, 8 – 11.

75.    In November 2010, after the dispute arose between GMT and Plaintiffs, JSL had a very low balance in its capital account. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 58, 21 – 24.

**PAGE - 12      AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1      76.    On June 15, 2010, GMT and JSL entered into a charter party agreement for the M/V

2  GMT VENUS.  See Chalos Declaration, Exhibit N.

3      77.    HONG prepared this agreement on behalf of both JSL and GMT, and signed for

4  GMT. *See* Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 51, 17 – 52, 3.

5      78.    Under the GMT-JSL charter party, hire payments were to be made to JSL's bank

6  account at Hana Bank (Singapore).  At the time the charter party was entered into, HONG was the

7  only signatory to the JSL bank account. See Deposition Transcript of HONG, Chalos Declaration,

8  Exhibit E, 52, 19 – 22.

9      79.    Also on June 15, 2010, GMT and Glovis Co., Ltd., Korea ("Glovis") entered into a

10  time charter party for the M/V GMT VENUS.   The time charter identifies GMT as the "Owners" of

11  the M/V GMT VENUS and Glovis, as charterers, and provides that the charterer is required to pay to

12  GMT hire at a rate of USD 8,500 per day pro rata.  See Chalos Declaration, Exhibit O.

13      80.    HONG signed the GMT-Glovis charter party on behalf of GMT. See Deposition

14  Transcript of HONG, Chalos Declaration, Exhibit E, 61, 24 – 62, 1.

15      81.    Under the GMT-Glovis charter party, hire payments were to be made to GMT's bank

16  account at Hana Bank (Singapore), over which HONG had exclusive control. See Deposition

17  Transcript of HONG, Chalos Declaration, Exhibit E, 62, 2 – 14.

18      82.    On November 4, 2010, an addendum to the time charter was executed, which HONG

19  signed on behalf of both GMT and JSL.  See Chalos Declaration, Exhibit Q.

20      83.    When signing on behalf of GMT, HONG identified himself as "Jay H. Hong," and

21  when signing on behalf of JSL, HONG identified himself as "Hong Jae Hyung." See Deposition

22  Transcript of HONG, Chalos Declaration, Exhibit E, pg. 64, 15 – 18.

23      84.    Upon information and belief, this use of an alias when signing on behalf of GMT was

24  an attempt by HONG to create an appearance of separateness between the two (2) companies.

25

26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

85.     Pursuant to the addendum, GMT "absolutely and unconditionally assign[ed] all hire and other payments under the charter party to Messrs JS Line S.A., with immediate effect." (emphasis added).  See Chalos Declaration, Exhibit Q.

86.     The hire rate for the time charter between GMT and Glovis was USD 8,500 per day pro rata, while the hire rate for the time charter between GMT and JSL was USD 7,950 per day pro rata. See Chalos Declaration, Exhibits N and O.

87.     Accordingly, GMT assigned to JSL more money than it owed JSL under the terms of the GMT-JSL charter party.

88.     Moreover, GMT routed funds that should have been received by GMT to JSL so as to fraudulently render itself "judgment proof" or otherwise avoid its liability to Plaintiffs.

89.     Further, HONG signed this addendum on behalf of both GMT and JSL, while admitting that, at the time, he was "in total control over both [the] GMT and JSL businesses."  See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 63, 5 – 13. (emphasis added).

90.     The Captain of the M/V GMT VENUS, in numerous correspondence exchanged with GMT, identified GMT as the "owner" of the GMT VENUS. Copies of the relevant correspondence are attached to the Chalos Declaration as Exhibit H.

91.     The initials "GMT" in the name of the M/V GMT VENUS are an acronym for "Global Maritime Trust." See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 79, 22 – 25.

92.     GMT is emblazoned on the stern of the vessel. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 141, 12 – 18.

93.     HONG's own mother, Lee Jin Tae ("Lee"), confirmed that her son is a successful shipowner.  See Deposition Transcript of Lee, Chalos Declaration, Exhibit I, pg 8, 2 – 10.

94.     HONG admitted that he incorporated the Panamanian company LS Maritime SA in 2005, and that he remains the president and director of this company. See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 38, 4 – 10.

**PAGE - 14     AMENDED VERIFIED COMPLAINT**

1    95.    Upon information and belief, HONG's wife, Yoon, was listed a director and secretary

2 of LS Maritime SA, and HONG's son, WON, was named a director and treasurer of LS Maritime SA.

3 In 2005, WON would have been no more than fifteen (15) years old, and could not have acted as a

4 director and treasurer of LS Maritime SA.

5    96.    HONG also incorporated Link Ocean Shipping SA ("Link Ocean"), another

6 Panamanian company which owns a vessel called the M/V GMT Polaris.  See Deposition Transcript

7 of HONG, Chalos Declaration, Exhibit E, pg. 37, 22 – 38, 3.

8    97.    Upon information and belief, the initials "GMT" are emblazoned on the M/V GMT

9 Polaris, and are an acronym for "Global Maritime Trust."

10    98.    HONG is a director and president of Link Ocean, Yoon is a director and secretary,

11 and their son, Won, is a director and treasurer.   See Deposition Transcript of Yoon, Chalos

12 Declaration, Exhibit F, pg. 143, 12 – 19.

13    99.    Despite their titles, Yoon and Won serve no functional role for Link Ocean. See

14 Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 146, 16 – 21.

15    100.    At the time of the dispute, GMT chartered the MV SB Queen. A copy of the

16 Infospectrum report evidencing same is attached to the Chalos Declaration as Exhibit J.

17    101.    However, on November 22, 2010, a time charter was executed for the MV SB Queen,

18 in which LS Maritime SA, another company under the control and domination of HONG, was listed

19 as the charterer of the vessel.  GMT was the managing agent for the vessel. A copy of the MV SB

20 Queen time charter is attached to the Chalos Declaration as Exhibit K.

21    102.    Upon information and belief, GMT assigned its charter of the MV SB Queen to LS

22 Maritime SA, so that no charter hire would be received into GMT's accounts, and as a further effort

23 to avoid the undisputed debt owed to Plaintiffs.

24    103.    As set forth in paragraphs forty (40) to one hundred and two (102), HONG

25 completely dominates and controls the above referenced companies which he has incorporated, and of

26

**PAGE - 15    AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1  which he is a director and officer, and disregards the corporate form of each in order to avoid liability

2  to creditors.

B.  **The degree of injustice visited on the litigants by recognition of the corporate entity**.

4      104.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs one

5  (1) through one hundred and three (103) and incorporate those allegations herein.

6      105.    OSS has obtained a Declaratory Arbitration Award providing that GMT has an

7  obligation "to provide security in respect of cargo claims relating to any cargo destined for Libya."

8  See ¶ 22, *supra*.

9      106.    No portion of the Declaratory Arbitration Award has been satisfied to date.

10     107.    HONG and GMT do not dispute that it owes a debt to Plaintiffs.  Rather, HONG

11 merely claims that "we don't have any money."   See Deposition Transcript of HONG, Chalos

12 Declaration, Exhibit E, pg. 60, 3 – 25.

13     108.    HONG, acting through GMT, has abused the corporate form to divert funds to JSL by

14 assigning all hire payments due to GMT, including but not limited to hire due under the GMT-Glovis

15 charter party to JSL, including amounts in excess of the hire owed by GMT to JSL under the JSL-

16 GMT charter party.

17     109.    By routing these hire payments to JSL, GMT has intentionally sought to remain

18 undercapitalized and remain in a "judgment proof" state in order to evade its liability to Plaintiffs.

19     110.    As a result of GMT's intentional attempts to remain undercapitalized and to avoid its

20 undisputed debts, Plaintiffs have been damaged in the sum of no less than USD 6,000,000.

C.  **The Fraudulent Intent of the Incorporators.**

22     111.    Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs one

23 (1) through one hundred and ten (110) and incorporate those allegations herein.

24     112.    At the time of its incorporation, JSL was severely undercapitalized.

25     113.    JSL was incorporated in order to purchase a vessel, however, the company's articles

26 of incorporation indicate that the company was capitalized with only USD 10,000. See Chalos

**PAGE - 16      AMENDED VERIFIED COMPLAINT**

1 Declaration, Exhibit M; see also Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg.

2 57, 12 – 58, 16.

3      114.    Further, HONG admitted that, despite the provisions in the articles of incorporation,

4 USD 10,000 was never paid to capitalize JSL.    *See* Deposition Transcript of HONG, Chalos

5 Declaration, Exhibit E, pg. 22, 8 – 11.

6      115.    Yoon confirmed that in November 2010, after the dispute arose between GMT and

7 Plaintiffs, JSL continued to retain a low balance in its capital account. See Deposition Transcript of

8 Yoon, Chalos Declaration, Exhibit F, pg. 58, 21 – 24.

9      116.    As set forth above in paragraphs forty (40) through one hundred and three (103),

10 HONG has continued to misuse the corporate forms of JSL and GMT so as to purposefully avoid

11 GMT's undisputed liability to Plaintiffs.

12      117.    Further, after the dispute arose between Plaintiffs and GMT, Defendants attempted to

13 restructure their corporate forms as follows so as to seek to avoid their undisputed liability to

14 Plaintiffs.

15      118.    In December 2010, HONG resigned as officer and director of JSL. See Deposition

16 Transcript of HONG, Chalos Declaration, Exhibit E, pg. 26, 12 – 14; 78, 4 – 9.

17      119.    However, there are no corporate resolutions or minutes of a meeting memorializing

18 the resignation and/or the JSL Board of Directors' acceptance of HONG's resignation. See

19 Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 145, 6 – 9.

20      120.    There are no corporate resolutions or minutes of a meeting that memorialize any

21 transfer of HONG's shares in JSL. See Deposition Transcript of HONG, Chalos Declaration, Exhibit

22 E, 145, 2 – 5.

23      121.    Further, HONG's wife Yoon purportedly became president and director of JSL after

24 HONG's resignation, despite having <u>no</u> prior experience in the shipping industry. See Deposition

25 Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 59, 17 – 19; 84, 2 – 13; see also Deposition

26 Transcript of HONG, Chalos Declaration, Exhibit E, 37, 3 – 6; 80, 18 – 81, 11.

122.    There is no evidence memorializing Yoon's appointment as president of JSL.

123.    At or about the same time, Yoon resigned as director and officer of GMT and purportedly relinquished her shares in the company. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg 137, 9 – 12.

124.    There is no evidence memorializing Yoon's resignation and relinquishment of shares in GMT.

125.    Thereafter, in March 2011, Lee, HONG's mother, was purportedly appointed a director of JSL. See Deposition Transcript of Lee, Chalos Declaration, Exhibit I, pg. 12, 25 – 13, 3.[4]

126.    Lee is eighty (80) years old; has never worked in the shipping industry; and has no knowledge of the nature or substance of the business of JSL. See Deposition Transcript of Lee, Chalos Declaration, Exhibit I. Pg. 11, 13 – 12, 18.

127.    Accordingly, the current directors of JSL are purportedly Yoon (HONG's wife), Won (HONG's son), and Lee (HONG's mother), none of whom have experience in shipping. See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 112, 2 – 22.

128.    Yoon is not familiar with the day-to-day operations of the GMT VENUS, is unaware of the necessary insurance policies which must be maintained for the vessel, and has never even seen the vessel. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 101, 10 – 15; 141, 23 – 25.

129.    As a result, Yoon, at a minimum, must constantly seek guidance from HONG when making any decisions relating to JSL, and in effect, HONG dominates and controls JSL through Yoon. See Deposition Transcript of Yoon, Chalos Declaration, Exhibit F, pg. 59, 17 –60, 1; see also Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg. 81, 3 – 10.

---

[4] While Lee submitted a declaration in support of JSL's motion to vacate, Lee knew nothing about either the company or the case pending before this Court and, in fact, did not even know that she was signing a declaration to be submitted to this Court. See Deposition Transcript of Lee, Chalos Declaration, Exhibit I, pg. 13, 12 – 18; 14, 8 – 16. Based upon the testimony of the witness, it appears the Defendants and their counsel knowingly offered the perjured declaration of Lee in support of their motion to vacate, and their arguments should be disregarded in their entirety.

**PAGE - 18      AMENDED VERIFIED COMPLAINT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1    130.    Despite being only a nominal officer and director of GMT, Yoon resigned as director

2    of GMT and gave up her minimal (0.02%) shares in the company, after the issues regarding the M/V

3    MIPO BONANZA arose.  See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, pg.

4    78, 20 – 24.

5    131.    HONG remains the sole shareholder of GMT. See Deposition Transcript of HONG,

6    Chalos Declaration, Exhibit E, 117, 17 – 20.

7    132.    Also after the dispute arose between Plaintiffs and GMT, GMT submitted an

8    application to the Singapore Registrar of Companies and Businesses to change its name to GMT

9    Shipping (S).    See Deposition Transcript of HONG, Chalos Declaration, Exhibit E, 80, 9 – 15, see

10    also Chalos Declaration, Exhibit P.

11    133.    Defendants have sought to restructure their corporate form in the manner set forth in

12    paragraphs one hundred and seventeen (117) through one hundred and thirty-two (132) to so as to

13    wrongfully avoid their (admitted) liabilities to Plaintiffs.

14    134.    HONG so completely dominates and disregards GMT and JSL's corporate form that

15    HONG, through GMT and JSL, manages and controls all operations of the M/V GMT VENUS.

16    135.    At all material times, there existed such unity of ownership and interest between

17    Defendants GMT, JSL and HONG that no separation exists between them, and the corporate form of

18    Defendants JSL and GMT  have been disregarded such that Defendant HONG, both individually and

19    through GMT, primarily transacted the business of Defendant JSL.

20    136.    There are reasonable grounds to conclude that Defendants JSL and HONG are the

21    alter-egos of Defendant GMT and, therefore, Plaintiffs have a valid prima facie *in personam* claim

22    against Defendants JSL and HONG based upon alter-ego liability.

23

24

25

26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1

2

## III. APPLICATION FOR ATTACHMENT UNDER

## SUPPLEMENTAL ADMIRALTY RULE B

3    137.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1

4    (one) through one hundred and thirty-six (136) and incorporate those allegations herein.

5    138.    Defendants GMT, JSL, and HONG cannot be found within this District within the

6    meaning of Supplemental Rule B and LR 1015-2; but Defendants are believed to have or will have

7    during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits,

8    effects, payment for bunkers, goods or services, and the like belonging to, claimed by, or for the

9    benefit of, the Defendants within this District held by various parties, as garnishees.

10    139.    Plaintiffs believe that some of the assets of Defendants, to wit: the Panama flag M/V

11    GMT VENUS; all property of Defendants aboard the M/V GMT VENUS; accounts; bank accounts;

12    monies; charter hire; credits; debts owed to the defendants; effects; payments for bunkers, goods or

13    services; debts; unmatured debts; payments from the purchasers of cargoes; freight and/or hire

14    payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendants are

15    located in the District;

16    WHEREFORE, Plaintiffs pray:

17    A.    That process in due form of law issue against the Defendants, citing them to appear

18    and answer under oath all, and singular, the matters alleged in the Verified Complaint;

19    B.    That since the Defendants cannot be found within this District pursuant to

20    Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets

21    expected in this District during the pendency of this action, including, but not limited to, the M/V

22    GMT VENUS and/or any assets within the possession, custody or control of any other garnishee

23    upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action

24    may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

25

26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1    C.    That this Court retain jurisdiction over this matter through the entry of any judgment

2  or award associated with any of the claims currently pending, or which may be initiated in the future,

3  including any appeals thereof;

4    D.    That judgment be entered against Defendants in the sum of USD 6,906,497.88,

5  together with interest and costs, and that the M/V GMT VENUS be condemned and sold for the said

6  amount together with reasonable attorneys' fees and costs; and

7    E.    That the Court grant such other and further relief as it deems just and proper.

8

9

10  DATED this 19th day of April, 2011.

11                                              WOOD TATUM

12                                              /s/ Robert I. Sanders
                                                Robert I. Sanders, OSB No. 70125
13                                              Todd A. Zilbert, OSB No. 89144
                                                6915 SW Macadam Avenue, Suite 115
14                                              Portland, Oregon 97219
                                                Tel: (503) 224-5430
15                                              Fax: (503) 241-7235
                                                Email: ris@woodtatum.com
16                                              *Attorney for Plaintiffs*

17                                              CHALOS & CO, P.C.

18                                              /s/ George M. Chalos
                                                George M. Chalos (*admitted pro hac vice*)
19                                              123 South Street
                                                Oyster Bay, New York 11771
20                                              Tel: (516) 714-4300
                                                Fax: (516) 750-9051
21                                              E-mail: gmc@chaloslaw.com
                                                *Attorney for Plaintiffs*
22

23

24

25

26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

**VERIFICATION OF AMENDED COMPLAINT**

1

2      I, George M. Chalos, am an attorney in New York in the firm of Chalos & Co, P.C., and

3  acting for Plaintiffs OS Shipping Co. Ltd and Assuranceforenigen Skuld (Gjensidig) with respect to

4  its claims against defendants Global Maritime Trust(s) Private Ltd, JS Line SA, and Hong Jae

5  Hyung a/k/a Jay Hong.

6      I have read the foregoing complaint and know the matters alleged to be true except for those

7  matters alleged on information and belief, which I believe to be true.

8      I make this declaration under penalty of perjury under the laws the State of Oregon and of the

9

10  United States of America.

11

12  DATED this 19th day of April, 2011.

13

14

15                              CHALOS & CO, P.C.

16                              /s/ George M. Chalos
17                              George M. Chalos (*admitted pro hac vice*)
                                123 South Street
18                              Oyster Bay, New York 11771
                                Telephone: (516) 714-4300
19                              Fax: (516) 750-9051
                                E-mail:  gmc@chaloslaw.com
20                              *Attorney for Plaintiffs*

21

22

23

24

25

26

**PAGE - 22    VERIFICATION OF
AMENDED COMPLAINT**

**CERTIFICATE OF SERVICE**

1

2    I hereby certify that I served the foregoing AMENDED VERIFIED COMPLAINT on the

3    following parties:

4

5    C. Kent Roberts
     Noah Jarrett
6    Catherine Brinkman
7    SCHWABE, WILLIAMSON & WYATT, PC
     1211 Southwest Fifth Avenue
8    Suites 1600-1900
     Portland, OR 97204
9    Email: njarrett@schwabe.com
10           cbrinkman@schwabe.com
             ckroberts@schwabe.com
11
     Owen F. Duffy
12   Email: ofduffy@gmail.com
     **Attorneys for Defendant JSL SA**
13
     Carl R. Neil
14   LINDSAY HART NEIL & WEIGLER
15   1300 SW Fifth Avenue, Suite 3400
     Portland, OR 97201-5640
16   Email: cneil@lindsayhart.com
     **Attorneys for Cargo Owner Hyundai Motor America Corporation**
17

18

19   by CM/ECF a true and correct copy hereof to said parties on the date below:

20   DATED the 19th day of April, 2011.

21                                    CHALOS & CO, P.C.

22                                    /s/ George M. Chalos
                                      George M. Chalos (*admitted pro hac vice*)
23                                    123 South Street
                                      Oyster Bay, New York 11771
24                                    Tel: (516) 714-4300
                                      Fax: (516) 750-9051
25                                    E-mail: gmc@chaloslaw.com
                                      *Attorney for Plaintiffs*
26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300