**Robert I. Sanders, OSB 70125**
Email: ris@woodtatum.com
**Todd A. Zilbert, OSB No. 89144**
Email: taz@woodtatum.com
**Wood Tatum**
6915 SW Macadam Avenue, Suite 115
Portland, Oregon 97219
Tel: (503) 224-5430
Fax: (503) 241-7235

**George M. Chalos** (*admitted pro hac vice*)
Email: gmc@chaloslaw.com
**Chalos & Co, P.C.**
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300
Facsimile: (516) 750-9051

Attorneys for Plaintiffs
OS Shipping Co. Ltd. and
Assuranceforenigen Skuld (Gjensidig)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OS SHIPPING CO. LTD. and ASSURANCEFORENIGEN SKULD (GJENSIDIG), on its own behalf and as subrogree of OSS SHIPPING CO. LTD.<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL MARITIME TRUST(S) PRIVATE LIMITED, JS LINE SA, and HONG JAE HYUNG a/k/a JAY H. HONG<br><br>Defendants. | Case No. Case No. 3:11-cv-377-BR<br><br>**IN ADMIRALTY**<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT** |

//

//

PAGE - 1    PLAINTIFFS' SUPPLEMENTAL
MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT JS LINE
SA'S MOTION TO VACATE
ATTACHMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES … … … … … … … … … … … … … … … … … … … … … … … …ii

INTRODUCTION … … … … … … … … … … … … … … … … … … … … … … … … … … … … …2

POINT I
PLAINTIFF NEED ONLY DEMONSTRATE PROBABLE
CAUSE TO SUSTAIN THE ATTACHMENT AT THIS
PRELIMINARY STAGE OF THE PROCEEDINGS … … … … … … … … … … … … … … …2

POINT II
PLAINTIFF HAS ESTABLISHED PROBABLE CAUSE FOR
THE ATTACHMENT OF THE GMT VENUS UNDER THE
BINDING PRECEDENTS OF THE NINTH CIRCUIT COURT OF APPEALS … … … … … … … …4

    A.    The amount of respect given to the separate identity of the corporation by its
          shareholders … … … … … … … … … … … … … … … … … … … … … … … … … … …6

    B.    The degree of injustice visited on the litigants by recognition of the corporate
          entity … … … … … … … … … … … … … … … … … … … … … … … … … … … … …12

    C.    The fraudulent intent of the incorporators … … … … … … … … … … … … … … … …14

POINT III
PERSUASIVE AUTHORITY FROM OTHER CIRCUITS ALSO
COMPEL A FINDING OF ALTER-EGO LIABILITY IN THE INSTANT CASE … … … … … … …18

POINT IV
THIS COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION
TO SUSTAIN THE ATTACHMENT … … … … … … … … … … … … … … … … … … … …22

POINT V
IN THE EVENT THIS HONORABLE COUNT VACATES THE
ATTACHMENT, A STAY OF THE RELEASE OF THE M/V
GMT VENUS PENDING APPEAL TO THE NINTH CIRCUIT
SHOULD BE GRANTED … … … … … … … … … … … … … … … … … … … … … … … …24

    A.    Plaintiffs would have a likelihood of success on appeal … … … … … … … … … …25
    B.    Plaintiffs will suffer irreparable injury absent a stay … … … … … … … … … … …25
    C.    Defendants will not suffer substantial injury if a stay is issued … … … … … … … … …26
    D.    The public interests weigh in favor of granting a stay … … … … … … … … … … …26

POINT VI
PLAINTIFFS SHOULD BE ENTITLED TO AN AWARD
OF COSTS AND FEES AS A RESULT OF DEFENDANTS' CONDUCT … … … … … … … … … …27

CONCLUSION … … … … … … … … … … … … … … … … … … … … … … … … … … …31

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

**PAGE - i**    **TABLE OF CONTENTS**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3

*Al-Kidd v. Ashcroft*, 580 F.3d 949, 966 (9th Cir. 2009)... ... ... ... ... ... ... ... ... ... ... ... ... ...3-4

4

*American Dredging Co. v. Miller*, 510 U.S. 443, 127 L. Ed. 285, 114 S. Ct. 981 (1994)... ... ... ......18

5

*Audit Services, Inc. v. Rolfson*, 641 F.2d 757 (9th Cir. 1989)... ... ... ... ... ... ... ... ... ... ...14

6

*Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 474 (2d Cir. 2006)... ... ... ... ...3

7

*Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769 (9th Cir. 1989)... ... ... ... ... ......12, 14

8

*Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003)... ... ... ... ... ...19-20

9

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009)... ... ... ... ... ... ... ...24-25

10

*Century Hotels v. United States*, 952 F.2d 107 (5th Cir. 1992)... ... ... ... ... ... ... ... ... ... ... ...19

11

*Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997)... ... ... ... ... ... ... ... ...5, 18-19

12

*Dale v. H.B. Smith Co., Inc.*, 910 F. Supp. 14 (D. Mass. 1995)... ... ... ... ... ... ... ... ... ... ...20

13

*Del Mar Seafoods Inc. v. Cohen*, 2007 U.S. Dist. LEXIS 64426 (N.D. Cal. 2007)... ... ... ... ... ...3

14

*Doe v. Unocal*, 248 F.3d 915, 927-28 (9th Cir. 2001)... ... ... ... ... ... ... ... ... ... ... ... ...8

15

*Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208 (9th Cir. 2010)... ...3, 22

16

*Freeman v. Complex Computing Co.*, 119 F.3d 1044 (2d Cir. 1997)... ... ... ... ... ... ... ... ...19

17

*G. Russell Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)... ... ... ... ... ... ... ... ... ... ...27-28

18

*Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1 (1st Cir. 1999)... ... ... ... ... ... ... ... ... ...20

19

*Hutto v. Finney*, 437 U.S. 678 (1978))... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...28

20

*Illinois v. Gates*, 462 U.S. 213 (1983)... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...4

21

*In re Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir. 1996)... ... ... ... ... ... ... ... ... ...28

22

*Interpool, Ltd. v. Char Yigh Marine, S.A.*, 890 F.2d 1453 (9th Cir. 1989)... ... ... ... ... ... ...24

23

*Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir. 1980)... ... ... ... ... ... ... ... ... ... ... ...5, 19

24

25

26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

*Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc.*,
   736 F.2d 516 (9th Cir. 1984) ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...8, 14

*Locke v. United States*, 11 U.S. (7 Cranch) 339, 3 L. Ed. 364 (1813) ... ... ... ... ... ... ...4

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58 (2d Cir. 2001) ... ...19

*Markow v. Alcock*, 356 F.2d 194 (5th Cir. 1966) ... ... ... ... ... ... ... ... ... ... ... ... 20

*Ministry of Defense v. Gould, Inc.*, 969 F.2d 764 (9th Cir. 1992) ... ... ... ... ... ... ... ... ...14

*Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14 (2004) ... ... ... ... ... ... ...18

*Oxford Capital Corp. v. USA*, 211 F.3d 280 (5th Cir. 2000) ... ... ... ... ... ... ... ... ... ...19

*Plumbers & Fitters, Local 761 v. Matt J. Zaich Construction Co.*,
   418 F.2d 1054 (9th Cir. 1969) ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...4, 5

*Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir. 1982) ... ... ... ... ... ...23

*Pride Shipping Corp. v. Tafu Lumber Co.*, 898 F.2d 1404 (9th Cir. 1990) ... ... ... ... ... ...26

*Primus Automotive Financial Services Inc. v. Rudolph A. Batarse*, 115 F.3d 644 (9th Cir. 1977) ...28

*Sea Prestigio, LLC v. M/Y TRITON*, 2010 U.S. Dist. LEXIS 135377 (S.D. Cal. 2010) ... ... ... ...3

*Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105 (9th Cir. 1979) ... ... ... ... ...4, 5, 6, 12, 18

*Swanson v. Levy*, 509 F.2d 859 (9th Cir. 1975) ... ... ... ... ... ... ... ... ... ... ... ... 4-5

*Swift & Co. v. Compania Caribe*, 339 U.S. 684 (1950) ... ... ... ... ... ... ... ... ... ... ...22, 24

*Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005) ... ... ... ... ... ... ... ... ...22

*UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir.), *cert denied*, 133 L. Ed.
   2d 203, 116 S. Ct. 297 (1995) ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...5

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) ... ... ... ... ... ... ... ... ... ...4

*United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774 (9th Cir. 1977) ... ... ... ...4, 5

*Vaughan v. Atkinson*, 369 U.S. 527 (1962) ... ... ... ... ... ... ... ... ... ... ... ... ... ...22

**OTHER AUTHORITIES**

FED. R. CIV. P. 62 ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...24

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

FED. R. CIV. P. SUPP. R. B ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ....2-3

FED. R. CIV. P. SUPP. R. E ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... 2, 3, 22, 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1

## INTRODUCTION

2        COME NOW, Plaintiffs, OS SHIPPING CO. LTD. (hereinafter "OSS"), and

3   ASSURANCEFORENIGEN SKULD (GJENSIDIG) (hereinafter "SKULD"), on its own behalf and

4   as subrogee of its Member, OSS and others[1] (hereinafter collectively "Plaintiffs"), by and through

5   their attorneys, CHALOS & CO, P.C. and Wood Tatum, and submit this Memorandum of Law in

6   Support of the Amended Complaint.    For the reasons more fully set forth below, Plaintiffs

7   respectfully submit they easily have met their burden of demonstrating a *prima facie* claim and

8   probable cause that an alter-ego relationship exists between Defendants GLOBAL MARITIME

9   TRUST (S) PRIVATE LIMITED (hereinafter "GMT"), JS LINE (hereinafter "JSL") and HONG

10  JAE HYUNG a/k/a JAY HONG (hereinafter "HONG") (hereinafter collectively "Defendants") so as

11  to sustain the attachment of the M/V GMT VENUS at this preliminary Rule E(4)(f) stage of the

12  proceedings.[2]

13

14

## POINT I

15

### PLAINTIFF NEED ONLY DEMONSTRATE PROBABLE CAUSE
### TO SUSTAIN THE ATTACHMENT AT THIS PRELIMINARY
### STAGE OF THE PROCEEDINGS

16

17

18       Rule B of the Supplemental Rules of Admiralty and Maritime Claims, FED. R. CIV. P. SUPP.

19  R. B, governs the procedure by which a party may attach another party's assets.  Rule B provides in

20  relevant part:

21

22           If a defendant is not found within the district, ... a verified complaint
             may contain a prayer for process to attach the defendant's tangible or
             intangible personal property – up to the amount sued for – in the hands

23

---

24  [1] Plaintiff SKULD's protection and indemnity (P&I) coverage is a mutual insurance, and its "assureds" are referred to as "Members."

25  [2] Plaintiffs incorporate by reference the arguments set forth in the Memoranda of Law and Supporting Declarations previously filed with this Court on April 1, 2011 and April 5, 2011. *See* Dkts. 31, 32, 37, and 38.

26  **PAGE - 2    PLAINTIFFS' SUPPLEMENTAL
           MEMORANDUM OF LAW IN
           OPPOSITION TO DEFENDANT JS LINE
           SA'S MOTION TO VACATE
           ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

> of garnishees named in the process ....the court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

FED. R. CIV. P. SUPP. R. B(1)(a). The Ninth Circuit Court of Appeals has stated that four (4) factors must be met by a Plaintiff in order to sustain an attachment under Rule B:

> Under Rule B of the Supplemental Admiralty Rules, Plaintiff may attach a defendant's property if four conditions are met. (1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.

*See Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208 (9th Cir. 2010) (citing *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 474 (2d. Cir. 2006); FED. R. CIV. P. SUPP. R. B).

Courts sitting within the Ninth Circuit have consistently held that in a Rule E post-seizure hearing, a Plaintiff need only demonstrate that *probable cause* exists to sustain the attachment. *See Del Mar Seafoods Inc. v. Cohen*, 2007 U.S. Dist. LEXIS 64426, at * 8 (N.D. Cal. 2007) ("The purpose of a Rule E(4)(f) hearing . . . is not to resolve these factual disputes, but rather to assess whether plaintiff's showing rises to the level of probable cause"); *see also Sea Prestigio, LLC v. M/Y TRITON*, 2010 U.S. Dist. LEXIS 135377 (S.D. Cal. 2010) (denying defendant's motion to vacate when plaintiff established probable cause for the order of arrest).

The Ninth Circuit Court of Appeals, relying on the traditional definition set forth by U.S. Supreme Court Justice Marshal in 1813, recently defined "probable cause" as requiring: "less than evidence which would justify condemnation; and, in all cases of seizure, has a fixed and well known meaning. It imports a seizure made under circumstances which warrant suspicion." *Al-Kidd v.*

PAGE - 3    **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1  *Ashcroft*, 580 F.3d 949, 966 (9th Cir. 2009) (quoting *Locke v. United States*, 11 U.S. (7 Cranch) 339,

2  348, 3 L. Ed. 364 (1813).  Similarly, in *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir.

3  2006), the Ninth Circuit emphasized that "probable cause means 'fair probability,' not certainty or

4  even a preponderance of the evidence." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 246 (1983)).

5

6       As will be set forth in greater detail below, the allegations set forth in the Amended Verified

Complaint are more than sufficient to establish that probable cause exists for the continued

7

8  attachment of the GMT VENUS under binding Ninth Circuit precedent and persuasive Rule B

9  jurisprudence from other Circuit and District Courts.

10                         **POINT II**

11       **PLAINTIFF HAS ESTABLISHED PROBABLE CAUSE FOR THE**
           **ATTACHMENT OF THE GMT VENUS UNDER THE BINDING**

12       **PRECEDENTS OF THE NINTH CIRCUIT COURT OF APPEALS**

13       The Ninth Circuit Court of Appeals has stated that "[i]ssues of *alter ego* do not lend

14  themselves to strict rules and *prima facie* cases.  Whether the corporate veil should be pierced

15  depends on the innumerable individual equities of each case."  *United States v. Standard Beauty*

16  *Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977).  The Court has "emphasized the injustice

17

18  created by recognition of its corporate entity, and the intent of the incorporators to evade civil or

19  criminal liability." *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979)

20  (citing *Swanson v. Levy*, 509 F.2d 859 (9th Cir. 1975); *Plumbers & Fitters, Local 761 v. Matt J.*

21  *Zaich Construction Co.*, 418 F.2d 1054 (9th Cir. 1969)).  As the Court noted in *Swanson*, "the

22  disregarding of the corporate form of business should not rest on the manner of doing business in

23

24  general, but should rest on the effect that the manner of doing business has on the particular

25

26  **PAGE - 4**      **PLAINTIFFS' SUPPLEMENTAL**
                        **MEMORANDUM OF LAW IN**
                        **OPPOSITION TO DEFENDANT JS LINE**
                        **SA'S MOTION TO VACATE**
                        **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1    transaction involved." *Swanson v. Levy*, 509 F.2d at 862 (9th Cir. 1975) (citing *Plumbers & Fitters*,

2    418 F.2d at 1058).

3        In *Standard Beauty*, the Ninth Circuit identified two (2) particular issues that must be

4    examined in an alter ego case: "First, the court must determine that there is 'such unity of interest

5    and ownership that the separate personalities of the corporation and the individual no longer exist.

6    Second, however, it must be shown that the failure to disregard the corporation would result in fraud

7    or injustice." *Id.* (internal citations omitted).  *See also Seymour*, 605 F.2d at 1111 (citing *Standard*

8
*Beauty*, 561 F.2d at 777).  More recently, in *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th

9

10   Cir. 1997), the Ninth Circuit Court of Appeals noted that "federal common law allows piercing of

11   the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so

12   dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the

13   controlling corporation's business instead of its own."  *Id.* at 1294 (citing *Kirno Hill Corp. v. Holt*,

14   618 F.2d 982, 985 (2d Cir. 1980)). As the Court noted that this test was "formulated by the Second

15   Circuit", the test set forth in *Chan* will be discussed in greater detail in Section III, *infra*.

16

17       Looking to the two (2) elements identified by the Court in *Standard Beauty*, the Court in

18   *Seymour* found:

19           a sort of generalized federal substantive law on disregard of corporate
entity which concentrates on three general factors: the amount of
20   respect given to the separate identity of the corporation by its
shareholders, the degree of injustice visited on the litigants by
21   recognition of the corporate entity, and the fraudulent intent of the
incorporators.
22

23   605 F.2d at 1111.  A party seeking to pierce the corporate veil "must prevail on the first threshold

24   factor and on one of the other two."  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475

25   (9th Cir.), *cert. denied*, 133 L. Ed. 2d 203, 116 S. Ct. 297 (1995).

26   **PAGE - 5**    **PLAINTIFFS' SUPPLEMENTAL
MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT JS LINE
SA'S MOTION TO VACATE
ATTACHMENT**

        CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1    Here, probable cause for the continued attachment of the GMT VENUS has been clearly

2    established, as set forth in the Amended Verified Complaint and the testimony obtained during the

3    depositions of Yoon Ji Yi, Hong Jae Hyung, and Lee Jin Tae at Seoul, Korea.[3]  The undisputed facts

4    of this matter, confirmed through the deposition testimony of Defendants' three (3) witnesses,

5    confirm that Defendant HONG exercises complete control over Defendants GMT and JSL and that

6
     he has improperly yet purposefully abused the corporate forms of <u>both</u> his companies in an effort to
7
     improperly make himself (and Defendant GMT) "judgment proof" and to wrongfully avoid GMT's
8
9    undisputed liability to Plaintiffs.[4]

10   **A. The amount of respect given to the separate identity of the corporation by its**
     **shareholders.**
11

12   In evaluating the first threshold factor for corporate veil piercing, the Court in *Seymour*

13   looked to factors which "tend to indicate [whether] the corporate formalities were properly

14   observed."  605 F.2d at 1111.    In *Seymour*, the Court identified that "some of the more serious

15   forms of abuse of the corporate entity" include commingling of funds between the alter ego entities;

16   one entity's treating of the other entity's assets as its own; or the alter-ego owning less than an

17
     adequate amount of assets to carry on its business. *Id.* at 1112.
18

19   Plaintiffs' Amended Verified Complaint summarizes the abundance of facts which establish

20   that Defendant GMT and/or Defendant HONG have disregarded the corporate form of Defendant

21   _____

22   [3] As per the Court's Order at the April 7, 2011 hearing, undersigned counsel to Plaintiffs traveled to Seoul, Korea during
     the week of April 11-15 to conduct the depositions of Yoon Ji Yi (the President of Defendant JSL), on April 12; Hong

23   Jae Hyung (the President of Defendant GMT), on April 13; and Lee Jin Tae (a Director of Defendant JSL), on April 14.
     Each of the deposed witnesses had previously submitted sworn Declarations to the Court in this matter.  Notably, Mr.
     Paul Rodgers, Singapore counsel for both GMT and HONG, insisted over undersigned counsel's objection on attending

24   <u>all three</u> depositions.

25

26   **PAGE - 6        PLAINTIFFS' SUPPLEMENTAL**
     **MEMORANDUM OF LAW IN**               CHALOS & CO, P.C.
     **OPPOSITION TO DEFENDANT JS LINE**    123 South Street
     **SA'S MOTION TO VACATE**              Oyster Bay, New York 11771
     **ATTACHMENT**                         Telephone:  (516) 714-4300

1  GMT such that GMT has actually carried on the business of JSL and/or HONG, and vice versa,

2  instead of its own.  As addressed in more detail in Point II(C), *infra*, GMT was incorporated in

3  Singapore by HONG in November 2001 and completely dominated by Hong.  *See* Chalos Dec. at

4  ¶ 15 and Exhibit "L"; Hong Deposition, p. 70, lines 2-10.  Subsequently, JSL was incorporated in

5  Panama by HONG on May 7, 2008 and, like GMT, was and is completely dominated by HONG.

6  Hong Deposition, p. 20, lines 20-24.  At the time of JSL's incorporation, HONG nominally

7  appointed his wife and his minor son as purported directors of the company.  *Id.*, p. 16, lines 20-22;

8  p. 17, lines 5-11.  Thereafter, on or about December 15, 2010, HONG is alleged to have resigned as

9  Director and President of JSL, turning over the role of President to his wife, Yoon Ji Yi (hereinafter

10  "Yoon"). *Id.*, p. 37, lines 3-6.  At or around the same time, Yoon purportedly resigned as Director of

11  GMT and relinquished her small (*i.e.* .02%) shareholding in GMT. *Id.*, p. 78, lines 20-24.  Most

12  recently, on or about March 15, 2011, HONG's eighty-year-old mother was nominally made a

13  Director of JSL.  Yoon Deposition, p. 155, lines 5-11.  As will be shown below, these attempts to

14  change the corporate structures of both GMT and JSL (all of which having taken place <u>after</u> the

15  dispute arose with Plaintiffs concerning the M/V MIPO BONANZA) and the nominal appointment

16  of HONG's wife, son, and mother as JSL's directors were undertaken in an effort to mask the fact

17  that HONG completely controls both GMT <u>and</u> JSL and to make GMT "judgment proof" for an

18  undisputed debt due to Plaintiffs.

19          There can be no dispute that shortly after GMT's dispute arose with Plaintiffs concerning the

20  MIPO BONANZA, HONG began to take measures to divert GMT's assets to JSL in an effort to

---

(...continued)

[4] True copies of the Deposition testimony of Yoon Ji Yi (hereinafter "Yoon Deposition"), Hong Jae Hyung (hereinafter "Hong Deposition") and Lee Jin Tae (hereinafter "Tae Deposition") are attached to the Chalos Declaration as Exhibits

(continued...)

**PAGE - 7**     **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1   avoid the debt owed to Plaintiffs.  On November 4, 2010, HONG, on behalf of both GMT and JSL,

2   executed an Addendum to GMT's charter party with the sub-charterer of the M/V GMT VENUS,

3   Glovis Co., Ltd. (hereinafter "Glovis").  At the time that the Addendum was executed, Hong was "in

4   total control over both [the] GMT and JSL businesses."  Hong Deposition, p. 63, lines 5-13

5   (emphasis added).  Pursuant to this Addendum, GMT "absolutely and unconditionally assign[ed] all

6   hire and other payments under the charter party to Messrs JS Line S.A., with immediate effect." See

7   Chalos Dec. at ¶ 19 and Exhibit "P" (emphasis added).  Notably, the hire rate for the GMT-Glovis

8   time charter was USD 8,500 per day pro rata, whilst the hire rate for the JSL-GMT time charter was

9   only USD 7,950 per day pro rata.  See Chalos Dec. at ¶¶ 17-18 and Exhibits "N" and "O".

10   Accordingly, GMT assigned to JSL more money than was actually owed to JSL under the JSL-GMT

11   time charter party.  Neither Yoon nor HONG could provide an explanation as to why GMT assigned

12   USD 8,500/day to JSL when JSL was only owed USD 7,950/day under the JSL-GMT charterparty.

13   See Yoon Deposition, pp. 162-63, lines 14-6; Hong Deposition, p. 89, lines 8-25.  In effect, and at a

14   minimum, this Addendum provides JSL with an interest-free loan from GMT in the amount of USD

15   550 per day (i.e. – more than USD 200,000 per year), for the remainder of the three and a half (3½)

16   year time charter with Glovis.  Under Ninth Circuit law, "evidence that a [corporation] provides

17   interest free loans without observing corporate formalities by documenting those loans with

18   promissory notes supports a finding that the [corporation] is the [other corporation's] alter ego."

19   Doe v. Unocal, 248 F.3d 915, 927-28 (9th Cir. 2001) (citing Laborers Clean-Up Contract

20   Administration Trust Fund v. Uriarte Clean-Up Service, Inc., 736 F.2d 516, 524 (9th Cir. 1984)).

_____

(continued)
"E", "F" and "I", respectively.

PAGE - 8    PLAINTIFFS' SUPPLEMENTAL
            MEMORANDUM OF LAW IN
            OPPOSITION TO DEFENDANT JS LINE
            SA'S MOTION TO VACATE
            ATTACHMENT

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

Even more indicative of HONG's improper motive in executing the referenced Addendum are his signatures.  HONG signed the Addendum both on behalf of JSL using the name "Hong Jae Hyung", while using an alias, "Jay H. Hong", when signing on behalf of GMT.  *See* Chalos Dec. at ¶ 19 and Exhibit P.

HONG has also diverted GMT's assets to other companies within the GMT group of companies.  Prior to Plaintiffs' dispute arising with GMT, another vessel, the M/V SB QUEEN, was chartered by GMT.  *See* Chalos Dec. at ¶ 13 and Exhibit "J".  However, on November 22, 2010, a time charter was executed for the M/V SB QUEEN in which LS Maritime SA, another company under the domination and control of HONG, was listed as the charterer of the vessel.  *See* Yoon Deposition, pp. 146-47, lines 22-18; Hong Deposition, p. 38, lines 4-10 (confirming that LS Maritime SA was another Panamanian company founded by HONG for which Yoon and Won were also nominally appointed as directors).  GMT was identified as the managing agent for the vessel.  *See* Chalos Dec. at ¶ 14 and Exhibit "K".  The assignment of the SB QUEEN charter party is further evidence of HONG's attempt to divert charter hire from GMT's accounts so as to evade potential attachment proceedings commenced by Plaintiffs.

In addition, JSL maintains an account at a Singapore branch of a Korean bank called Hana Bank.  *See* Yoon Deposition, p. 85, lines 6-13.  The account was opened by HONG, who was the sole and exclusive signatory on the account.  *Id.* at lines 19-22.  *See also* Hong Deposition, p. 25, lines 9-16.  Significantly, neither HONG nor Yoon were able to provide any evidence that HONG has ever been removed as a signatory on the JSL account.  Yoon Deposition, p. 86, lines 14-18; *see also* Hong Deposition, pp. 26-27, lines 25-4.

**PAGE - 9**    **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1    The deposition testimony of Yoon, HONG, and Lee Jin Tae (hereinafter "Lee") further

2    confirmed that other basic corporate formalities are not – and <u>never</u> have been – observed by JSL.

3    Since its inception, JSL has not kept official corporate books or a stock register (*see* Hong

4    Deposition, p. 21, lines 11-13). Also, to the extent records "regarded as important" are kept, they are

5    kept by HONG at <u>his</u> home in Singapore.[5] Hong Deposition, p. 36, lines 22-25. JSL does not have

6    an office. Yoon Deposition, p. 50, lines 8-9. JSL does not have office staff. *Id.*, p. 50, lines 10-12.

7    JSL does not have its own website. *Id.*, pp. 50-51, lines 24-1. JSL does not have its own telephone

8    listing. *Id.*, p. 51, lines 2-4. Nor does JSL have its own e-mail address(es). *Id.*, p. 89, lines 17–19.

9

10    JSL does not have any employees. Hong Deposition, p. 138, lines 2-4. The company's investors

11    were not issued any shares in the corporation. Yoon Deposition, p. 31, line 21; Hong Deposition, p.

12    157, lines 15-18. In fact, Hong refused to reveal the names of any of the investors in the company.

13    *Id.*, pp. 155-56, lines 8-1; pp. 156-57, lines 20-3.

14

15    Moreover, JSL has "no regular meeting[s]" of the Board of Directors. Yoon Deposition, p.

16    51, lines 22-25. The few meetings of JSL's directors which allegedly took place were conducted <u>at</u>

17    <u>GMT's office in Singapore</u>. *Id.* p. 52, lines 9-12. Yoon was identified as the company's "secretary"

18    at the time that the first two (2) meetings purportedly took place; however, she ultimately confirmed

19    that she did not actually prepare the minutes of the meetings and that the documents were, in fact,

20    <u>prepared by HONG</u>. Yoon Deposition, p. 78, lines 16-19. Similarly, HONG prepared minutes of

21    the March 2011 meeting of the directors (which, again, took place in GMT's office) <u>after</u> he

22    purportedly resigned from JSL. Yoon Deposition, pp. 83-84, lines 17-13. Worse still, the purported

23    minutes are unreliable, and contain false representations. Thus, although the minutes of the

24

25

---

[5] Again, JSL is purportedly a Panamanian company.

26    **PAGE - 10**      **PLAINTIFFS' SUPPLEMENTAL**
         **MEMORANDUM OF LAW IN**
         **OPPOSITION TO DEFENDANT JS LINE**
         **SA'S MOTION TO VACATE**
         **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

meetings expressly stated that all of JSL's directors (*i.e.* – HONG, Yoon, and their son, Hong Sung Won) were "present at the meeting in person", Yoon confirmed that her son, Hong Sung Won (hereinafter "Won") did not and could not have actually attended, as he was in the Korean army at the time the meetings purportedly took place in Singapore.   Yoon Deposition, p. 65, lines 18-23. Interestingly, HONG stated that he believed his son was a student in the United States at the time the meeting allegedly took place.  Hong Deposition, p. 48, lines 6-18.  Either way, the son could not have been present.  To underscore the "bogus" nature of the meeting minutes, Won's "signature" purportedly appears on <u>both</u> the minutes of the May 2008 and January 2010 board meeting minutes, but the "signature" is markedly different on each document.  *See* Chalos Dec. at ¶ 10 and Exhibit "G".  It is clear from both Yoon and Hong's testimony that Won did <u>not</u> attend either meeting and, as such, the records must have been "fudged".

       Finally, Yoon confirmed that even following her husband HONG's purported resignation in late 2010, she continues to rely on HONG for <u>all</u> decisions she makes on behalf of JSL. Specifically, Yoon testified:

| | |
|---|---|
| MR. CHALOS: | Mrs. Yoon, you don't have any experience in shipping, do you? |
| MRS. YOON: | No experience. |
| MR. CHALOS: | You don't make any decisions without talking to your husband, do you? |
| MRS. YOON: | After he resigned, I get some help from my husband whenever I make some decisions. |
| MR. CHALOS: | And that's because you're not capable of making the decisions based on experience, correct? |
| MRS. YOON: | Yeah, that's right. |

Yoon Deposition, pp. 59-60, lines 17-1.  Said another way, there can be no meaningful dispute that HONG continues to dominate and exercise exclusive control over <u>both</u> GMT and JSL.

**PAGE - 11**      **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

In short, JSL has failed to observe even the most basic corporate formalities since its inception in 2008. *See also* Point II(C), *infra*. Perhaps more egregious, HONG has continued to exert control over both JSL and GMT, by maintaining continued access to JSL's bank account, functionally making all decisions for the companies, and preparing the minutes of the few meetings JSL claims to have taken place either at his home or at GMT's office. Notably, there was no JSL corporate resolution accepting the purported transfer of HONG's shares to his son, nor was there any corporate resolution or minutes of meetings memorializing the JSL Board's acceptance of HONG's resignation. *See* Hong Deposition, p. 145, lines 2-9. As such, Plaintiffs submit that probable cause for this first threshold factor (*i.e.* – lack of respect given to each corporation's separate identities) has easily been established. While Plaintiffs recognize that "evidence establishing disrespect for a corporation's separate identity alone is an insufficient reason to pierce the corporate veil", *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir. 1989), the additional two (2) factors set forth in *Seymour* are also clearly met.

**B. The degree of injustice visited on the litigants by recognition of the corporate entity.**

The second *Seymour* factor looks to whether "substantial injustice" will result if the corporation is respected. *Seymour*, 605 F.2d at 1113. The "inability to collect [upon a judgment] does not, by itself, constitute an inequitable result." *Id.* However, the Ninth Circuit has recognized that this element may be satisfied when "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Laborers Clean-Up Contract v. Uriarte Clean-Up Serv.*, 736 F.2d 516, 524 (9th Cir. 1984).

In this matter, Plaintiffs have obtained a Declaratory Arbitration Award, holding GMT responsible for "provid[ing] security in respect of cargo claims relating to any cargo destined for

PAGE - 12          **PLAINTIFFS' SUPPLEMENTAL**
                   **MEMORANDUM OF LAW IN**
                   **OPPOSITION TO DEFENDANT JS LINE**
                   **SA'S MOTION TO VACATE**
                   **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1   Libya." *See* Chalos Dec. at ¶ 7 and Exhibit "D".  At the time that GMT contracted to charter the

2   M/V MIPO BONANZA, GMT was well aware of the requirements of the charter party and, in fact,

3   HONG admitted that he negotiated the terms of the charter. Hong Deposition, p. 121, lines 11-15.

4   Notwithstanding these obligations, once the dispute arose between Plaintiffs and GMT[6], HONG took

5   significant and substantial steps to shield GMT's assets and to undercapitalize GMT so that GMT

6   would be "judgment proof."

7

8        HONG does not dispute that GMT owes a debt to Plaintiffs, testifying:

9   MR. CHALOS:     Now, you don't dispute that GMT owes a debt to my client, OS
                     Shipping, do you? . . .

10  MR. HONG:        You're right.  There are [sic] a lot of debt.

11  Hong Deposition, p. 60, lines 21-25.  Rather, HONG simply claims that ". . . we don't have any

12  money." *Id.*, p. 60, lines 18-19.  Significantly, as noted in Point II(A), *supra*, GMT has assigned <u>all</u>

13  of the hire payments due and owing to it from the subcharterer of the GMT VENUS, Glovis, directly

14  to JSL.  *See* Chalos Dec. at ¶ 19 and Exhibit "P".  This Addendum, which was signed by HONG on

15  behalf of both GMT <u>and</u> JSL, assigned JSL USD 550 per day <u>more</u> than JSL is actually owed under

16  the JSL-GMT time charter.  *See* Chalos Dec. at ¶¶ 17-18 and Exhibits "N" and "O".  HONG has

17  taken similar measures to hide other GMT assets, such as assigning GMT's charter of the M/V SB

18  QUEEN to LS Maritime SA, another company under HONG's control.  Upon information and

19  belief, similar actions have taken place with respect to another HONG-owned and controlled vessel,

20  the GMT POLARIS.  This diversion of assets from GMT to other companies controlled by HONG

21

22

23  ─────────────────

24  [6] Defendants were well aware of problems with both the timber and the tomato paste cargos as early as August 26, 2010,
    when surveyors attended on board in Jeddah, Saudi Arabia, to investigate damages to the cargo and the potential causes

25  of the damages. GMT and the Captain of the MIPO BONANZA were provided with a copy of this survey report, which
    put GMT on notice that it might be liable to Plaintiffs for the cargo damage. *See* Chalos Dec. at ¶ 6 and Exhibit "C".

26  **PAGE - 13**     **PLAINTIFFS' SUPPLEMENTAL**
                     **MEMORANDUM OF LAW IN**
                     **OPPOSITION TO DEFENDANT JS LINE**
                     **SA'S MOTION TO VACATE**
                     **ATTACHMENT**

CHALOS & CO., P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1  shows that GMT has intentionally sought to remain undercapitalized and to avoid its undisputed

2  liability to Plaintiffs.

3  **C. The fraudulent intent of the incorporators.**

4  The Ninth Circuit has indicated that fraudulent intent can be satisfied "in one of two ways:

5  either by proof of fraud in the formation of the corporation *or* fraudulent misuse of the corporate

6  form after incorporation." *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th

7  Cir. 1989) (emphasis in original) (citing *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir.

8  1981)).  Courts may "find evidence of fraudulent intent in the failure of the incorporators adequately

9

10  to capitalize the corporation at its inception." *Ministry of Defense v. Gould, Inc.*, 969 F.2d 764, 769

11  (9th Cir. 1992) (quoting *Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-*

12  *Up Service, Inc.*, 736 F.2d 516, 524 (9th Cir. 1984)).  Said another way, fraudulent intent may be

13  found if the company does not have "capital reasonably regarded as adequate to enable [the

14  corporation] to operate its business and pay its debts as they mature." *Id.* (internal citations omitted).

15

16  The undisputed facts of this matter (and the sworn deposition testimony of HONG, Yoon,

17  and Lee) clearly support well beyond a mere "probable cause" finding of fraudulent intent by GMT

18  and JSL's incorporator, HONG.  HONG testified that following his incorporation of JSL in Panama

19  in 2008[7], the company remained dormant, with no assets, until the GMT VENUS was purchased on

20  March 3, 2010 – nearly two (2) years later.  Hong Deposition, p. 122, lines 10-15.  JSL's Articles of

21

---

22  [7]  HONG's incorporation of JSL in Panama provides further indicia of his fraudulent intent.  HONG (and his family) has
23  no connection to Panama, does not speak Spanish, and cannot even understand the purported "corporate documents".
     Hong Deposition, p. 19, lines 5-13.  In fact, Yoon was unable to even determine if JSL's corporate documents were in
24  the Spanish or English language. Yoon Deposition, p. 54, lines 8-13.  Hong and his family have never been to Panama.
     Hong Deposition, p. 19, lines 10-11; p. 31, lines 5-6.  Interestingly, Hong acknowledged that there is no disclosure of a
25  company's shareholders or investors in Panama, which seems to be important to HONG, as evidenced by his refusal to
     answer questions on this point.  *Id.*, pp. 15-16, lines 24-2; pp. 155-56, lines 5-1.

26  **PAGE - 14**      **PLAINTIFFS' SUPPLEMENTAL**           CHALOS & CO, P.C.
                    **MEMORANDUM OF LAW IN**                123 South Street
                    **OPPOSITION TO DEFENDANT JS LINE**     Oyster Bay, New York 11771
                    **SA'S MOTION TO VACATE**               Telephone:  (516) 714-4300
                    **ATTACHMENT**

1   Incorporation reveal that the company should have been capitalized with a mere USD 10,000 –

2   despite being incorporated for the sole purpose of purchasing a vessel.  *See* Chalos Dec. at ¶ 16 and

3   Exhibit "M"; Yoon Deposition, p. 58, lines 11-16.   However, even this minimal amount was <u>never</u>

4   <u>actually paid</u> into the company to capitalize it when it was incorporated.  Hong Deposition, p. 22,

5   lines 8-11.  At no time was this deficiency ever rectified.  In fact, Yoon testified that when HONG

6   purportedly left JSL in late 2010, JSL had "not a lot" in its capital account.  Yoon Deposition, p. 58,

7   lines 21-24.  Even now, as President of the company, Yoon does not know how much money JSL

8   has in its capital account.  *Id.*, p. 59, lines 4-8.

9

10   Further evidence of HONG's improper motive in incorporating JSL can be found through his

11   nominal appointment of his wife and his infant son as "directors" of the company to simply create

12   the appearance of observing corporate formalities.  Hong Deposition, p. 16, lines 20-22.  There is no

13   dispute that Yoon and Won had no experience in running a ship owning company and never

14   undertook a functional role in JSL.  In fact, HONG's son, Hong Sung Won, was named as JSL's

15   treasurer, even though he was only a student at the time and otherwise incapable of actually

16   performing the role.  Worse for Defendants, when pressed on this point, Yoon readily admitted that

17   Won never actually served as the company's treasurer.  *See* Yoon Deposition, p. 57, lines 2-8.  Yoon

18   further testified that upon incorporation of JSL, *"I followed the requirements of Panama company*

19   *and one of their requirements was to have three shareholders and they gave us just a form where I*

20   *can fill in <u>but they didn't care</u> what number I write down on the document . . . They didn't care.  I*

21   *can just − <u>I could just make up</u> . . ."* Yoon Deposition, p. 32, lines 15-22 (emphasis added).

22   Similarly, Yoon confirmed that she played no functional role at GMT and that she was simply

23

24

25

26   **PAGE - 15**          **PLAINTIFFS' SUPPLEMENTAL**
                            **MEMORANDUM OF LAW IN**
                            **OPPOSITION TO DEFENDANT JS LINE**
                            **SA'S MOTION TO VACATE**
                            **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1    named an officer and director because *"that was one of the requirements when GMT was founded."*

2    Yoon Deposition, pp. 123-24, lines 24-2.  Yoon stated:

3
      MR. CHALOS:      So the representations that you made to the Singapore authorities were

4
                          not true, were they?
      MRS. YOON:      That's true on paper.

5
      MR. CHALOS:      But not true in reality?
      MRS. YOON:      That's right.  I didn't work.

6

7    *Id.*, p. 133, lines 17-21. HONG and Yoon made no efforts to ensure that the corporate records of JSL

8    and GMT were accurate.  *Id.*, pp. 123-24, lines 24-2; p. 133, lines 17-21. In fact, Hong confirmed

9    that until his purported resignation from JSL in late 2010, he and he alone was in complete control of

10   both JSL and GMT.  Hong Deposition, p. 35, lines 4-13.

11         HONG has purposefully sought to misuse the corporate forms of both JSL and GMT so as to

12   avoid GMT's liability to Plaintiffs.  After GMT's dispute arose with Plaintiffs concerning the MIPO

13   BONANZA, Hong superficially sought to change the corporate forms of JSL and GMT to create the

14   appearance of two (2) separate companies, while all the time functionally maintaining complete

15

16   control of both.

17         First, on or about November 19, 2010, Yoon resigned as nominal director of GMT and

18   relinquished her minority (.02%) shareholding in GMT.  Yoon Deposition, p. 137, lines 9-12.

19   Following Yoon's resignation, HONG became sole Director and 100% shareholder of GMT.  There

20   is no evidence of any corporate resolutions or minutes of a meeting that memorialize Yoon's

21   resignation and relinquishment of shares in GMT.  Shortly thereafter, HONG resigned as President

22   and Director of JSL.  Hong Deposition, p. 26, lines 12-14; p. 78, lines 4-8.  Upon his resignation, he

23

24   purportedly gave all of his shares in JSL to his son, Won.  *Id.*, p. 134, lines 9-20; Yoon Deposition,

25   p. 39, lines 23-25.  Once again, there are no corporate resolutions accepting HONG's resignation and

26   **PAGE - 16**        **PLAINTIFFS' SUPPLEMENTAL**
                           **MEMORANDUM OF LAW IN**
                           **OPPOSITION TO DEFENDANT JS LINE**
                           **SA'S MOTION TO VACATE**
                           **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1  no contemporaneous records memorializing the purported transfer of shares. Hong Deposition, pp.

2  144-45, lines 18-5. Upon HONG's resignation, Yoon became President of JSL, despite having no

3  prior experience in the shipping industry. *Id.*, pp. 80-81, lines 18-2; Yoon Deposition, p. 59, lines

4  17-19; p. 84, lines 2-13. Finally, in March 2011, Lee, HONG's 80-year-old mother, was appointed a

5  Director of JSL. Lee Deposition, pp. 12-13, lines 25-3. Importantly, as discussed in greater detail in

6  Point VI, *infra*, Defendants appear to have knowingly offered a perjured declaration by Lee, an

7

8  unsuspecting and arguably "sweet little old lady", in support of JSL's Motion to Vacate.

9       Despite JSL's claimed separate ownership and directorship from GMT, it is clear that Yoon,

10  Won, and Lee serve these roles for JSL in name only, as HONG continues to maintain complete

11  control over both GMT and JSL. Won is currently in the Korean army. Yoon Deposition, p. 63,

12  lines 22-23. Lee plays no functional role in the company. HONG and Yoon "do not tell [her] the

13  detailed information" about the company. Lee Deposition, p. 13, lines 17-18. Lee further testified:

14

15  MR. CHALOS:       Do you have to do anything on behalf of the company as one of its
                       directors?

16  MRS. LEE:         No.

17  *Id.*, p. 13, lines 9-12. Similarly, despite being President of the company, Yoon is not familiar with

18  the day-to-day operations of JSL or the GMT VENUS; is unaware of the necessary insurance

19  policies that must be maintained for the vessel; and has never even seen the vessel that her company

20  owns. Yoon Deposition, pp. 100-01, lines 24-15; p. 141, lines 23-25. Because she lacks the

21  necessary experience to run JSL, she, at a minimum, "get[s] some help from [her] husband whenever

22  [she] make[s] some decisions" and "when there is an issue, [she] get[s] some help from [her]

23  husband." *Id.*, p. 59, lines 17-19, 22-23; p. 84, lines 6-10. There can be no meaningful dispute that

24

25  HONG, in reality, continues to dominate and control the business of both JSL and GMT.

26  **PAGE - 17**       **PLAINTIFFS' SUPPLEMENTAL**
                         **MEMORANDUM OF LAW IN**          CHALOS & CO, P.C.
                         **OPPOSITION TO DEFENDANT JS LINE**   123 South Street
                         **SA'S MOTION TO VACATE**          Oyster Bay, New York 11771
                         **ATTACHMENT**                     Telephone: (516) 714-4300

1    In short, the documentary evidence and deposition testimony obtained in Seoul, Korea

2    establish that HONG is seeking to grossly misuse and has disregarded the corporate form of JSL

3    since its incorporation in 2008 and that he has continued to do so for an improper purpose, *i.e.* – to

4    shield GMT from its liability to Plaintiffs.  Accordingly, Plaintiffs submit that they have gone way

5    beyond a "probable cause" showing of the third factor established by the Ninth Circuit in *Seymour*

6    (*i.e.* – fraudulent intent), and, in fact, have gone further to show that imposing alter-ego liability

7    upon HONG and JSL for GMT's debts would be appropriate under the facts and circumstances of

8    
9    this matter.

10                                        **POINT III**

11              **PERSUASIVE AUTHORITY FROM OTHER
               CIRCUITS ALSO COMPEL A FINDING OF ALTER-EGO
12             <u>LIABILITY IN THE INSTANT CASE</u>**

13    The U.S. Supreme Court has recognized the importance of a uniform Federal maritime law,

14    
15    stating that "Article III's grant of admiralty jurisdiction 'must have referred to a system of law

16    coextensive with, and operating uniformly in, the whole country.'"  *Norfolk Southern Ry. v. James*

17    *N. Kirby, Pty Ltd.*, 543 U.S. 14, 28 (2004) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443,

18    451, 127 L. Ed. 285, 114 S. Ct. 981 (1994)).

19    In addition to the Ninth Circuit, Federal Courts throughout the country have established

20    advisory guidelines as to when an alter-ego relationship may be found, which provide additional

21    persuasive authority for this Court.  In fact, in *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir.

22    1997), the Ninth Circuit Court of Appeals expressly relied on a test formulated by the Second Circuit

23    
24    Court of Appeals, noting that "federal common law allows piercing of the corporate veil where a

25    corporation uses its alter ego to perpetuate a fraud <u>or</u> where it so dominates and disregards its alter

26    **PAGE - 18**          **PLAINTIFFS' SUPPLEMENTAL
                             MEMORANDUM OF LAW IN
                             OPPOSITION TO DEFENDANT JS LINE
                             SA'S MOTION TO VACATE
                             ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1   ego's corporate form that the alter ego was actually carrying on the controlling corporation's

2   business instead of its own." *Id.* at 1294 (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir.

3   1980)) (emphasis added).

4           In applying this test, the Second Circuit Court of Appeals has identified ten (10) factors to be

5   considered in imposing alter-ego liability:

6
7           (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling
            of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common
            office space, address and telephone numbers of corporate entities; (6) the degree of
8           discretion shown by the allegedly dominated corporation; (7) whether the dealings
            between the entities are at arms length; (8) whether the corporations are treated as
9           independent profit centers; (9) payment or guarantee of the corporation's debts by the
            dominating entity, and (10) intermingling of property between the entities.
10
11  *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001)

12  (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).  Similarly, the

13  Fifth Circuit Court of Appeals has established twelve (12) non-exhaustive factors to be weighed by

14  its Courts:

15          (1) the parent and subsidiary have common stock ownership; (2) the parent and
            subsidiary have common directors or officers; (3) the parent and subsidiary have
16          common business departments; (4) the parent and subsidiary file consolidated
            financial statements; (5) the parent finances the subsidiary; (6) the parent caused the
17          incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate
            capital; (8) the parent pays salaries and other expenses of the subsidiary; (9) the
18          subsidiary receives no business except that given by the parent; (10) the parent uses
            the subsidiary's property as its own; (11) the daily operations of the two corporations
19          are not kept separate; (12) the subsidiary does not observe corporate formalities.

20  *Oxford Capital Corp. v. U.S.A.*, 211 F.3d 280, 284 (5th Cir. 2000) (*citing Century Hotels v. United*

21  *States*, 952 F.2d 107, 110 (5th Cir. 1992)).  *See also Bridas S.A.P.I.C. v. Government of*

22  *Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003) (Additional factors include "(1) whether the

23  directors of the 'subsidiary' act in the primary and independent interest of the 'parent'; (2) whether

24  others pay or guarantee debts of the dominated corporation; and (3) whether the alleged dominator

26  PAGE - 19         **PLAINTIFFS' SUPPLEMENTAL**
                     **MEMORANDUM OF LAW IN**
                     **OPPOSITION TO DEFENDANT JS LINE**          CHALOS & CO, P.C.
                     **SA'S MOTION TO VACATE**                    123 South Street
                                                                  Oyster Bay, New York 11771
                     **ATTACHMENT**                               Telephone: (516) 714-4300

1  deals with the dominated corporation at arm's length.") (*citing Markow v. Alcock*, 356 F.2d 194,

2  197-98 (5th Cir. 1966).

3      The First Circuit Court of Appeals, while not establishing a distinct set of factors to be

4  considered, has ruled that alter-ego liability may be found "when these is evidence of a confused

5  intermingling between corporate entities or where one corporation actively and directly participates

6  in the activities of the second corporation, apparently exercising pervasive control." *Hiller*

7  *Cranberry Prods. v. Koplovsky*, 165 F.3d 1, 10 (1st Cir. 1999) (*citing Dale v. H.B. Smith Co., Inc.*,

8  910 F. Supp. 14, 18 (D. Mass. 1995)). Although the factors to be considered vary from Circuit to

9  Circuit, all courts appear to agree that no one (1) factor is determinative. Rather, the courts will look

10  to the totality of the circumstances and, upon balancing the relevant factors, will decide whether (or

11  not) to impose alter-ego liability.

12      Plaintiffs respectfully submit that they have made more than a mere "probable cause"

13  showing and that imposing alter-ego liability upon JSL and HONG for GMT's debts is warranted

14  under each of the tests set forth above by other Circuit Courts. As set forth in section II, *infra*,

15  HONG caused JSL and GMT's incorporation, and subsequently there has been complete disregard

16  of corporate formalities. JSL does not have an office, a website, a telephone listing, a fax machine, a

17  bona fide e-mail address, and/or any employees. Yoon Deposition, p. 50, lines 8-9, 10-12, 24-25; p.

18  51, lines 1-4; p. 89, lines 17-19; *see also* Hong Deposition, p. 31-32, lines 16-18; p. 34, lines 6-7. All

19  purported meetings of JSL's Board of Directors, both before and <u>after</u> HONG's resignation as JSL's

20  Director, President, and shareholder, took place at either HONG's home in Singapore or at GMT's

21  office. Yoon Deposition, p. 52, lines 9-12. JSL does not and has never maintained official corporate

22  books or a stock register. *Id.*, p. 83, lines 11-16; Hong Deposition, p. 21, lines 2-13. JSL has never

26  **PAGE - 20**    **PLAINTIFFS' SUPPLEMENTAL**
     **MEMORANDUM OF LAW IN**
     **OPPOSITION TO DEFENDANT JS LINE**
     **SA'S MOTION TO VACATE**
     **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1   issued shares of the company. Yoon Deposition, p. 31, line 21; Hong Deposition, p. 157, lines 15-18.

2   Moreover, JSL was woefully undercapitalized for a corporation that was formed for the purpose

3   owning a large, ocean going ship.   Yoon Deposition, p. 58, lines 11-16; Hong Deposition, p. 22,

4   lines 8-11.  There is no evidence that any of the dealings between JSL and GMT were at arms length

5   and, in fact, significant documents between the two companies (such as the November 4, 2010

6   addendum to the GMT-Glovis charter party) were signed by Hong on behalf of both companies

7   

8   (while using an alias).  HONG confirmed that at the time the JSL-GMT charter party was executed,

9   he was the president and a director of JSL and was in total control of both JSL and GMT.  Hong

10  Deposition, pp. 34-35, lines 25-13.[8]  Indeed, even after HONG's purported resignation, JSL's

11  President, Yoon, conceded that she continues to rely on HONG for his assistance with important

12  business decisions on behalf of JSL.  Yoon Deposition, p. 59, lines 17-19, 22-23; p. 84, lines 6-10.

13  Perhaps most significant, HONG was never removed as a signatory on JSL's bank account – an

14  account that is maintained in Singapore, despite JSL being a Panama company and supposedly

15  

16  operating out of Korea.  Yoon Deposition, p. 86, lines 17-18; *see also* Hong Deposition, pp. 26-27,

17  lines 25-4.

18      Simply put, the evidence presented in this matter overwhelmingly demonstrates that HONG

19  and/or GMT has completely controlled and dominated JSL such that JSL has carried on GMT and/or

20  HONG's own personal business as its own, and/or vice versa.  Accordingly, it is respectfully

21  submitted that the factors established by other Circuit Courts weigh in favor of imposing alter-ego

22  liability upon JSL and HONG for GMT's debts to Plaintiffs.

23  

---

24  [8] As undersigned counsel asked HONG during his deposition testimony, "you didn't negotiate in the mirror, did you?"
25  Hong Deposition, p. 35, lines 15-16.  While the question was posed in a moment of levity, the fact remains that no
    "arms-length" negotiations ever took place between two (2) companies which were and are 100% controlled by Hong.

26  **PAGE - 21**      **PLAINTIFFS' SUPPLEMENTAL**
                  **MEMORANDUM OF LAW IN**                           CHALOS & CO, P.C.
                  **OPPOSITION TO DEFENDANT JS LINE**                123 South Street
                  **SA'S MOTION TO VACATE**                          Oyster Bay, New York 11771
                  **ATTACHMENT**                                     Telephone: (516) 714-4300

## POINT IV

### THIS COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO SUSTAIN THE ATTACHMENT

The Supreme Court has recognized, "equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief." *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962)).    In *Swift & Co. v. Compania Caribe*, the Supreme Court stated that it "find[s] no restriction upon admiralty by chancery so unrelenting as to bar the grant of any equitable relied even when that relief is subsidiary to issues wholly within admiralty jurisdiction." *Swift & Co. v. Compania Caribe*, 339 U.S. 684, 691-92 (1950).

Here, the Defendants have engaged in a pattern of purposeful and wrongful conduct in order to shield their assets and avoid liability to OSS.   Since the cargo damage giving rise to the claims between the parties arose in August 2010, HONG has sought to superficially restructure his corporations in order to appear as separate entities to evade undisputed obligations to Plaintiffs.  As set forth above, maritime plaintiffs are not required to prove their case at a Rule E(4)(f) hearing; rather, they must simply make a valid *prima facie* admiralty claim against the defendant(s). *Equatorial Marine Fuel Mgmt. Servs. PTE v. MISC Berhad*, 591 F.3d 1208 (9th Cir. 2010).  This has easily been done here.  In addition to the factual allegations and documentary evidence set forth in Plaintiff's initial Verified Complaint (Dkt. 1) and Opposition to JSL's Motion to Vacate and to Dismiss (Dkts. 37-38), the documentary discovery and the deposition testimony of Yoon Ji Yi, Lee Jin Tae, and Defendant HONG further underscore the alter-ego relationship that exists between the Defendants.

PAGE - 22        **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1    To date, Defendants have successfully evaded Plaintiffs' numerous attempts (worldwide) to

2  obtain security for its claims and to secure payment of the debts undisputedly due and owing to

3  Plaintiffs. *See* Hong Deposition, p. 60, lines 18-25.  If the GMT VENUS is released, Plaintiffs will

4  lose perhaps their only meaningful opportunity to ever obtain security and/or otherwise collect the

5  amounts undisputedly due and owing, as Defendants will undoubtedly continue to engage in

6  purposeful activities intended to avoid liability to Plaintiffs. The Ninth Circuit Court of Appeals has

7  recognized the transient nature of shipping and has stated:

8

9           A ship may be here today and gone tomorrow, not to return for an
             indefinite period, perhaps never. Assets of its owner, including debts
10           for freights, as in this case, within the jurisdiction today, may be
             transferred elsewhere or paid off tomorrow. It is for these reasons that
11           maritime actions in rem, libelling a ship or other assets of a defendant,
             Supplemental Rule C, or attachment in actions in personam,
12           Supplemental Rule B, were developed.

13  *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982).  After all, "[a]

14  ship can quietly slip its moorings and depart the jurisdiction." *Id.*   This peripatetic nature of

15  maritime parties and their assets underscores the need for maritime attachments, particularly in cases

16  such as this one where a judgment debtor purposefully has taken affirmative steps to inequitably

17  evade its undisputed liabilities. *See* Hong Deposition, p. 60, lines 21-25

18

19          Accordingly, Plaintiffs respectfully request that this Honorable Court exercise its equitable

20  discretion to sustain the Rule B attachment of the GMT VENUS.

21  //

22  //

23  //

24  //

25

26  **PAGE - 23**         **PLAINTIFFS' SUPPLEMENTAL**
                          **MEMORANDUM OF LAW IN**
                          **OPPOSITION TO DEFENDANT JS LINE**
                          **SA'S MOTION TO VACATE**
                          **ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

POINT V

**IN THE EVENT THIS HONORABLE COURT VACATES THE ATTACHMENT, A STAY OF THE RELEASE OF THE M/V GMT VENUS PENDING APPEAL TO THE NINTH CIRCUIT SHOULD BE GRANTED**

In the event the Court may be inclined to vacate the attachment, Plaintiffs respectfully request that the release of the attached M/V GMT VENUS be stayed, pursuant to FED. R. CIV. P. 62(c) and the Court's inherent powers to stay matters before it, until the matter can be presented to the Ninth Circuit Court of Appeals.[9] As Justice Frankfurter noted in the context of the vacatur of a maritime attachment, "Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Swift & Company Packers v. Compania Colombiana Del Caribe, S.A.*, 339 US 684 (1950). *See also Interpool, Ltd. v. Char Yigh Marine, S.A.*, 890 F.2d 1453, 1458 (9th Cir. 1989) ("... if appellate review of the order dissolving the attachment were postponed until after that order had taken effect, restoration of the attachment would be only theoretically possible.").

The factors which courts evaluate in determining whether to grant a stay of a matter pending appeal pursuant to FED. R. CIV. P. 62(c) are the following:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits on appeal;
(2) whether the applicant will be irreparably injured absent a stay;
(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies.

---

[9] Plaintiffs respectfully note that FED. R. CIV. P. 62(a) provides that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry." Accordingly, under Rule 62(a), a mandatory fourteen (14) day stay is imposed on any judgment, and if this Court is inclined to vacate the attachment of the M/V GMT VENUS, the release of the vessel must be stayed for a period of fourteen (14) days, at the very least.

PAGE - 24    **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1   *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 849 (9th Cir. 2009). Plaintiffs

2   respectfully submit that they have satisfied each of the four (4) criteria for a stay, and analyzes each

3   below.

4   **A. Plaintiffs would have a likelihood of success on appeal.**

5
6   Plaintiffs have met their burden of sustaining a Rule B attachment under the precedents of

7   this Circuit, as set forth in Sections I and II, *supra*, and would have a high likelihood of success on

8   appeal, if necessary. Specifically, Plaintiffs' Amended Verified Complaint establishes a valid *prima*

9   *facie* maritime claim for breach of a charter party agreement against GMT, and furthermore,

10  demonstrated that there is probable cause for its alter ego allegations against JSL and HONG.

11  Plaintiffs have presented significant evidence of the impermissible misconduct perpetrated by

12  Defendants upon Plaintiffs, and, in particular, of the superficial change in Defendants' corporate

13  forms to avoid GMT's undisputed liability to Plaintiffs.

14
15  Plaintiffs respectfully submit that they have satisfied their burden to sustain the attachment of

16  the M/V GMT VENUS. In view of the binding precedents of the Ninth Circuit Court of Appeals

17  and in view of the persuasive authority from elsewhere concerning the limited grounds for vacatur

18  available to this Court, Plaintiffs submit that they have a substantial probability of success on appeal

19  should further proceedings prove necessary.

20  **B. Plaintiffs will suffer irreparable injury absent a stay.**

21
22  Plaintiffs respectfully submit that if the Court vacates the attachment and a stay is denied, the

23  security for Plaintiffs' claim – *i.e.*, the M/V GMT VENUS -- will surely leave the district. Any

24  opportunity for Plaintiffs to obtain security for their claim will likely be lost forever, particularly in

25  light of Defendants' conduct and objective to continue to evade the undisputed liability to Plaintiffs.

26  PAGE - 25          **PLAINTIFFS' SUPPLEMENTAL**
                       **MEMORANDUM OF LAW IN**                    CHALOS & CO, P.C.
                       **OPPOSITION TO DEFENDANT JS LINE**         123 South Street
                       **SA'S MOTION TO VACATE**                   Oyster Bay, New York 11771
                       **ATTACHMENT**                              Telephone: (516) 714-4300

1    Absent a stay, even if an appeal to the Ninth Circuit were successful, it would be fruitless, as

2    Plaintiffs would never be able to regain security.  Such a result is counterproductive to one of the

3    primary goals of Rule B attachment – *i.e.* to ensure satisfaction of judgment if suit is successful.  *See*

4    *Pride Shipping Corp. v. Tafu Lumber Co.*, 898 F.2d 1404, 1407-08 (9th Cir. 1990).  In fact, this

5    matter presents even more compelling reasons for a stay, as Plaintiffs have <u>already</u> obtained

6    declaratory arbitration Awards against GMT.  There is no doubt that, absent a stay, the Plaintiffs'

7    numerous (worldwide) efforts to recover these amounts will again be evaded by Defendants, causing

8    

9    Plaintiffs to suffer irreparable harm.

10       **C. Defendants will not suffer substantial injury if a stay is issued.**

11       A stay will preserve the status quo on appeal, and defendants will suffer no injury, let alone

12    substantial injury, if the requested stay is granted.  While JSL may argue that it would suffer loses

13    related to the daily cost of maintaining the vessel and lost hire, Supplemental Rule E(5) provides for

14    the release of attached property upon the posting of a bond.  Accordingly, HONG, JSL, and/or GMT

15    could post a bond in order to obtain the prompt release of the vessel.  The potential injury to

16    

17    Plaintiffs of forever losing their opportunity to obtain security clearly outweighs any actual or

18    potential harm to Defendants.

19       **D. The public interests weigh in favor of granting a stay.**

20       Finally, the public interest weighs in favor of preserving the ability of appellate courts to

21    adjudicate controversies before they become factually moot.  Moreover, the release of the M/V GMT

22    VENUS would render the multiple declaratory arbitration awards issued against GMT effectively

23    incapable of being enforced, as there would be no security to satisfy the Plaintiffs' claim (and as

24    

25    

26    **PAGE - 26**          **PLAINTIFFS' SUPPLEMENTAL**
                          **MEMORANDUM OF LAW IN**                    CHALOS & CO, P.C.
                          **OPPOSITION TO DEFENDANT JS LINE**          123 South Street
                          **SA'S MOTION TO VACATE**                    Oyster Bay, New York 11771
                          **ATTACHMENT**                               Telephone: (516) 714-4300

1   mentioned above, Plaintiffs will likely lose any opportunity of ever obtaining security from

2   Defendants).

3         When evaluating the above-cited factors, it is evident that they weigh in favor of granting a

4   stay of the release of the M/V GMT VENUS pending appeal to the Ninth Circuit.  Accordingly, if

5   this Honorable Court should be inclined to vacate the attachment of the M/V GMT VENUS,

6   Plaintiffs respectfully request that that the release of the M/V GMT VENUS be stayed beyond the

7   fourteen (14) day automatic stay period, whilst under appeal to the Ninth Circuit.

8

9                                          **POINT VI**

10   **PLAINTIFFS SHOULD BE ENTITLED TO AN AWARD OF**
    **COSTS AND FEES AS A RESULT OF DEFENDANTS' CONDUCT**

11         Last, but certainly not least, Plaintiffs respectfully request an award for the costs and fees

12   they have had to incur as a result of Defendants' actions in submitting a meritless motion to vacate

13   knowingly based upon a perjured declaration.  Specifically, Plaintiffs request an Award for, *inter*

14   *alia*, the costs and expenses incurred in having to attend and conduct the depositions of Yoon Ji Yi,

15

16   Hong Jae Hyung, and Lee Jin Tae in Seoul, South Korea.

17         Federal Courts have an inherent power to impose attorney's fees as a sanction for bad-faith

18   conduct engaged in during the course of litigation.  Traditionally, under the "American Rule" each

19   side is responsible for paying their own legal costs.  However, there are three limited exceptions

20   whereby a Court can order an award of attorney's fees: (1) the common fund exception, which

21   allows a court to award attorney's fees to a party whose litigation efforts directly benefit others; (2)

22   when a party has acted in willful disobedience of a court order; or (3) when a party has acted in bad

23   faith, vexatiously, wantonly, or for oppressive reasons.  *See G. Russell Chambers v. NASCO, Inc.,*

24   501 U.S. 32, 45 (1991).  If a Court finds that "fraud has been practiced upon it, or that the very

25

26   PAGE - 27

**PLAINTIFFS' SUPPLEMENTAL**
**MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT JS LINE**
**SA'S MOTION TO VACATE**
**ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1  temple of justice has been defiled," attorney's fees are an appropriate sanction. *Id.* at 46.  In *Primus*

2  *Automotive Financial Services Inc. v. Rudolph A. Batarse,* 115 F.3d 644 (9th Cir. 1997), the Court

3  reasoned that "a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a

4  frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id.* at

5  649 (quoting *In re Keegan Management Co.,* 78 F.3d 431, 436 (9th Cir. 1996)). "A party also

6  demonstrates bad faith 'by delaying or disrupting the litigation or hampering enforcement of a court

7  order.'" *Id.* at 649 (quoting *Hutto v. Finney*, 437 U.S. 678 (1978)).

8

9      In support of its Motion to Vacate the attachment of the M/V GMT VENUS, Defendant JSL

10  knowingly submitted the Declaration of Lee Jin Tae, which was purportedly sworn under the penalty

11  of perjury of the laws of the United States of America. *See* Dkt. 28.  At the April 6, 2011 hearing

12  before this Court, counsel for JSL represented that although he did not personally speak with Lee

13  before obtaining her declaration, he personally exchanged e-mails with her and prepared the

14  declaration with her through e–mail, in the English language. *See* Transcript of Proceedings before

15  Judge Anna Brown, April 6, 2011, at p. 33, lines 5-20; p. 34, lines 4-10 (Chalos Dec. at ¶ 21 and

16  Exhibit "R").

17

18      During the deposition of Yoon Ji Yi, undersigned counsel questioned Yoon as to why Lee

19  was offered to give testimony on behalf of JSL.  Yoon stated:

20      MR. CHALOS:      Now who said that she [*i.e.* - Lee] would be a good witness on behalf
21                       of the company?  Did you say that?
        MRS. YOON:       I guess lawyer said.
22      MR. CHALOS:      Which lawyer?  Which lawyer said that?
        MRS. YOON:       The lawyer in the States.  The lawyer in Portland.
23      MR. CHALOS:      Do you know the lawyer in Portland?  Is that Mr. Noah?
        MRS. YOON:       [In English] Maybe Noah.
24      MR. CHALOS:      Is there anybody else in Portland that you know?
25      MRS. YOON:       No. I guess Noah.

26  PAGE - 28      **PLAINTIFFS' SUPPLEMENTAL**
                   **MEMORANDUM OF LAW IN**            CHALOS & CO, P.C.
                   **OPPOSITION TO DEFENDANT JS LINE**  123 South Street
                                                        Oyster Bay, New York 11771
                   **SA'S MOTION TO VACATE**           Telephone: (516) 714-4300
                   **ATTACHMENT**

1   MR. CHALOS:  And as you sit here today, that's your best recollection of who said Lee Jin Tae would be a good witness on behalf of JS Lines?

2   MRS. YOON:  The lawyer said so.

3 *Id.*, p. 157, lines 2-15. In fact, Yoon commented that "lawyer did everything":

4   MR. CHALOS:  When you say the "lawyer" . . . I don't know who you mean. Can you be more specific?

5   MRS. YOON:  I do not remember the name. Norman something. [In English] I'm not sure.

6

7   MR. DUFFY:  For the record, I believe she's referring to Noah Jarrett.

   MR. CHALOS:  He was here?

   MRS. YOON:  No. I just – no. He prepared a statement, but he was not here.

8

9 *Id.*, pp. 99-100, lines 15-16, 21-5.

10   At the time this declaration was filed with the Court, Defendants knew (and certainly should

11 have known) that its contents were false and, in bad faith, proceeded to file it anyway. The Lee

12 Declaration set forth numerous details about JSL's corporate structure and introduces various

13 corporate documents, which JSL claimed supported its argument that GMT and JSL are separate and

14 distinct corporate entities. *See generally,* Dkt. 28. However, the deposition testimony of Lee Jin

15 Tae confirms that:

16

17   ○ She is unable to read and understand the English language (*see* Lee Deposition, p. 7, lines 3-5);

18   ○ When she was given the document to sign, nobody translated it for her (*id.*, p. 22, lines 1-3).

19   ○ She was unaware that she was making any statements or signing any papers to be submitted to this Court (*id.*, p. 14, lines 8-16);

20   ○ She was instructed by her daughter-in-law, Yoon Ji Yi, to sign a "really important document", but she could not understand what was in the document because it was in English (*id.*, p. 18, lines 14-20);

21

22 Even worse, Lee's testimony confirmed that <u>she had no idea what she was attesting to</u> when she

23 signed a Declaration in support of JSL's Motion to Vacate and Dismiss. Specifically, Lee testified:

24

25   ○ She has never seen the GMT VENUS's registration certificate or any contracts relating to the vessel's management. Lee Deposition, p. 10, lines 6-11; *compare with* Lee Declaration (Dkt.

26 **PAGE - 29**  **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

                     CHALOS & CO, P.C.
                      123 South Street
                      Oyster Bay, New York 11771
                      Telephone: (516) 714-4300

28) at ¶¶ 2, 4 (attaching copies of the GMT VENUS's registration certificate and the management agreement between JS Line and Doriko);

○ She has never heard of the Lloyd's database report. Lee Deposition, p. 10, lines 21-23; *compare with* Lee Declaration (Dkt. 28) at ¶ 4 (attaching a copy of a printout from the Lloyd's database);

○ She has never heard the term P&I. Lee Deposition, p. 10, line 24, p. 11, line 11; *compare with* Lee Declaration (Dkt. 28) at ¶ 5 (attaching a copy of JSL's Protection and Indemnity (P&I) Certificate of Insurance);

○ She does not know what a time charter or a subcharter is. Lee Deposition, p. 11, lines 15-18; *compare with* Lee Declaration (Dkt. 28) at ¶¶ 6-7 (stating that the GMT VENUS has been time chartered from JSL to GMT since June 2010 and that GMT sub-chartered the ship to Glovis Co.);

○ She has never heard of Global Maritime Trust Pte. Ltd. Lee Deposition p. 11, lines 22-24; *compare generally with* Lee Declaration.

○ She does not know a company called Hyundai Glovis. Lee Deposition, p. 9, lines 15-16; *compare with* Lee Declaration (Dkt. 28) at ¶ 7 (stating that Glovis Co. recently chaged its name to Hyundai Glovis).

○ She has never been to JSL's office or to any meetings on behalf of JSL. Lee Deposition pp. 11-12, lines 25-2, 5-7; *compare with* Lee Declaration (Dkt. 28) at ¶ 10.

○ She does not know if JSL has a bank account, who its accountants are, or who its lawyers are, and has never reviewed any corporate books or records for JSL. Lee Deposition, p. 12, lines 3-4, 8-12, 16-18; *compare with* Lee Declaration (Dkt. 28) at ¶ 10.

However the declaration came to be created, it was clearly not the personal knowledge of Lee Jin Tae. Simply put, Lee's Deposition testimony confirmed that she knows <u>nothing</u> about the company; nor has she even heard of the documents and matters attested in her declaration. In fact, Yoon also admitted that Lee has never been part of JSL's operations (Yoon Deposition, p. 156, lines 10-12); did not know who had the GMT VENUS on charter (*id.*, lines 13-15); did not know who subchartered the ship as of April 1, 2001 (*id.*, lines 16-18); did not know who the officers, directors, and shareholders of GMT were (*id.*, lines 19-21); and did not have any personal knowledge of changes in the officers, directors, and shareholders except that she had become a director of JSL (*id.*, pp. 156-57, lines 22-1).

Yoon Ji Yi also submitted a Declaration in support of JSL's motion to vacate. *See* Dkt. 43. Yoon testified that she read the English version of the declaration and that she believed she

PAGE - 30    **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION TO VACATE ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

1   understood it. *See* Yoon Deposition, p. 22-23, lines 24-2.  However, Yoon later confirmed that she

2   does not really understand English and did not understand the declaration. *Id.*, pp. 24-25, lines 22-1;

3   pp. 40-41, lines 13-5; p. 76, lines 3-5.   In fact, further underscoring the improper activity engaged in

4   by Defendants, Yoon stated that she was asked to sign a Declaration in support of JSL's Motion to

5   Vacate by <u>Defendant HONG</u>:

6

7        MR. CHALOS:     Now, how did you receive this document to sign what we've marked
                                 as Exhibit 6, your sworn declaration?

8        MRS. YOON:     I got this from Mr. Hong.
     MR. CHALOS:     Mr. Hong gave that to you to sign; is that right?

9        MRS. YOON:     He gave this document to read it, to review.

10   *Id.* p. 93, lines 14-18.[10]

11        It is clear that Defendants knowingly submitted at least two (2) declarations, sworn under

12   penalty of perjury, of witnesses that—at best—could not credibly make the statements contained

13   therein and—and worst—were perjured.  Accordingly, Plaintiffs respectfully submit that an award of

14   costs and attorneys' fees in favor of Plaintiffs is warranted under the circumstances.

15

16   <b><u>CONCLUSION</u></b>

17        WHEREFORE, Plaintiffs, OS SHIPPING CO. LTD. and ASSURANCEFORENIGEN

18   SKULD (GJESNSIDIG) , respectfully submit that they have satisfied their burden of sustaining the

19   attachment of the M/V GMT VENUS under Fed. R. Civ. P. Supp. R. B, Fed. R. Civ. P. Supp. R. E,

20   and the binding precedents of the Ninth Circuit Court of Appeals.  Accordingly, Plaintiffs request

21   that the attachment of the M/V GMT VENUS be sustained; that Plaintiffs be awarded their costs and

22

---

23   [10] Defendants' intellectual sleight of hand is further highlighted by the fact that <u>none</u> of the declarations offered by

24   Defendants in their motion to vacate revealed the close family relations between the declarants.  These relations, which
were revealed during the declarants' deposition testimony, confirmed Defendants' efforts to further mislead the Court.

25   *See, e.g.*, Declaration of Yoon Ji Yi (Dkt. 43), stating "I know Lee Jin Tae very well in the same way I know my own
family", while neglecting to mention that Lee is, in fact, her mother-in-law.

26   **PAGE - 31**       **PLAINTIFFS' SUPPLEMENTAL
                      MEMORANDUM OF LAW IN
                      OPPOSITION TO DEFENDANT JS LINE
                      SA'S MOTION TO VACATE
                      ATTACHMENT**

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone:  (516) 714-4300

1    fees incurred in opposing JS LINE S.A.'s meritless motion to vacate; and that the Court grant such

2    other and further relief that it deems just and proper.

3    DATED this 19th day of April, 2011.

4

5

6                                               WOOD TATUM

7                                               /s/ Robert I. Sanders

8                                               Robert I. Sanders OSB No. 70125
                                                Email: ris@woodtatum.com
9                                               6915 SW Macadam Avenue, Suite 115
                                                Portland, Oregon 97219
10                                              Tel: (503) 224-5430
                                                Fax: (503) 241-7235
11

12                                              CHALOS & CO, P.C.

13                                              /s/ George M. Chalos

14                                              George M. Chalos (admitted pro hac vice)
                                                123 South Street
15                                              Oyster Bay, New York 11771
                                                Tel: (516) 714-4300
16                                              Fax: (516) 750-9051
                                                E-mail: gmc@chaloslaw.com

17

18

19

20

21

22

23

24

25

26    PAGE - 32         PLAINTIFFS' SUPPLEMENTAL
                        MEMORANDUM OF LAW IN                      CHALOS & CO, P.C.
                        OPPOSITION TO DEFENDANT JS LINE           123 South Street
                        SA'S MOTION TO VACATE                     Oyster Bay, New York 11771
                        ATTACHMENT                                Telephone: (516) 714-4300

1

## CERTIFICATE OF SERVICE

2       I hereby certify that I served the foregoing **PLAINTIFFS' SUPPLEMENTAL**

3  **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JS LINE SA'S MOTION**

4  **TO VACATE ATTACHMENT** on the following parties:

5

6       C. Kent Roberts
        Noah Jarrett
        Catherine Brinkman
7       SCHWABE, WILLIAMSON & WYATT, PC
        1211 Southwest Fifth Avenue
8       Suites 1600-1900
        Portland, OR 97204
9       Email: njarrett@schwabe.com
               cbrinkman@schwabe.com
10              ckroberts@schwabe.com

11

12      Owen F. Duffy
        Email: ofduffy@gmail.com
13      **Attorneys for Defendant JSL SA**

14      Carl R. Neil
        LINDSAY HART NEIL & WEIGLER
15      1300 SW Fifth Avenue, Suite 3400
        Portland, OR 97201-5640
16      Email: cneil@lindsayhart.com
17      **Attorneys for Cargo Owner Hyundai Motor America Corporation**

18
    by CM/ECF a true and correct copy hereof to said parties on the date below:
19
    DATED this 19th day of April, 2011.
20
                                        CHALOS & CO, P.C.
21

22                                      /s/ George M. Chalos
23                                      George M. Chalos (*admitted pro hac vice*)
                                        123 South Street
24                                      Oyster Bay, New York 11771
                                        Telephone: (516) 714-4300
25                                      Fax: (516) 750-9051
                                        E-mail: gmc@chaloslaw.com
26                                      Attorneys for Plaintiff

CHALOS & CO, P.C.
123 South Street
Oyster Bay, New York 11771
Telephone: (516) 714-4300

**PAGE - 33     CERTIFICATE OF SERVICE**